THOMAS M COOLEY LAW SCHOOL v DOE 1

Docket No. 307426. Submitted December 12, 2012, at Lansing. Decided
April 4, 2013 at 9:00 a.m.

Thomas M. Cooley Law School brought an action in the Ingham
Circuit Court against four John Doe defendants, alleging, in part,
that John Doe 1 (Doe 1) made defamatory statements criticizing
Cooley on an Internet website created by Doe 1 under a pseud-
onym. Cooley then petitioned the Superior Court of California,
County of San Francisco, seeking the issuance of a subpoena to
Weebly, Inc., the California-based company that is the website host
for Doe 1's website, ordering it to produce documents that include
Doe 1's user account information, including his identity. The
California court issued the subpoena. Doe 1 then filed a motion in
the trial court to quash the subpoena or, alternatively, issue a
protective order limiting or restricting Cooley's use or disclosure of
Doe 1's identifying information. Before the motion to quash was
resolved, Weebly released Doe 1's identifying information to
Cooley. Cooley then requested that Doe 1 withdraw his motion to
quash on the basis that the motion was moot. Doe 1 declined
Cooley's request. Cooley then filed an amended complaint that
identified Doe 1 by his legal name. Doe 1 supplemented his motion
to quash and moved to strike the identifying information. During
arguments regarding the motion to quash, Doe 1's counsel agreed
that the motion to quash was moot but noted that Doe 1 was, as an
alternative, seeking a protective order. The court, Clinton Canady
III, J., provisionally ruled under MCR 2.302(B)(7) that Weebly
might have inadvertently disclosed the information, struck
Cooley's amended complaint, and ordered Cooley not to initiate
further discovery or disclose the information pending its final
decision on the motion. The court then ruled that the motion to
quash was not moot, reasoning that its ruling on Doe 1's motion to
strike had placed the parties back in the positions they had
occupied before Weebly had disclosed the information. Following
further arguments on the motion to quash, the court determined
that there was no Michigan law on point and that it would,
therefore, examine decisions from other jurisdictions, including
*Dendrite Int'l, Inc v Doe, No 3*, 342 NJ Super 134 (2001), and *Doe
No 1 v Cahill*, 884 A2d 451 (Del, 2005). The court determined that,

in order to adequately protect Doe 1's interests in remaining anonymous, it must balance those interests against Cooley's interests in holding Doe 1 accountable for alleged defamation. The court adopted and applied the *Dendrite* analysis and ruled that Doe 1 had been notified and that Cooley had sufficiently alleged slander per se. It ruled that statements that are slanderous per se are not entitled to First Amendment protection and, thus, Cooley would not have to prove actual malice. The court denied Doe 1's motion to quash, declined Doe 1's request for a protective order "for the reasons stated on the record," and allowed Cooley to use the information that it had discovered from Weebly. The court, however, stayed its ruling pending Doe 1's appeal to the Court of Appeals. The Court of Appeals granted Doe 1's application for leave to appeal in an unpublished order, entered May 25, 2012 (Docket No. 307426). Cooley moved to dismiss the appeal as moot. The Court of Appeals denied the motion in an unpublished order, entered July 20, 2012 (Docket No. 307426).

The Court of Appeals *held*:

1. The issues presented in this appeal are not moot because Cooley's knowledge of Doe 1's name does not prevent the Court of Appeals from granting relief that will have a practical legal effect on the controversy. There are no indications in this case that Doe 1's anonymity was destroyed either by the disclosure of Doe 1's name in the lower-court record or as a result of his application for membership in the State Bar of California or that the Court of Appeals is unable to fashion the relief Doe 1 seeks. Whether and in what fashion the identity of an anonymous Internet speaker can be discovered or protected under Michigan law is a publically significant issue that is likely to reoccur yet evade judicial review. It is appropriate for the Court of Appeals to reach the merits of the issues in this appeal.

2. An author's decision to remain anonymous is an aspect of the freedom of speech protected by the First Amendment.

3. A defendant's right to speak freely is not absolute; the First Amendment does not protect certain categories of speech, including defamation.

4. A party may acquire information from another party by subpoenaing them to provide a deposition, other documents, or tangible things; a party may petition a court in another state to issue a subpoena or equivalent process if necessary to acquire discovery for an action in Michigan; the court in which the action is pending may, on a motion by a party, quash or modify the subpoena or enter a protective order.

5. A plaintiff claiming defamation must plead its claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory; a plaintiff alleging libel must plead the very words of the libel. Therefore, several questions can be resolved on the pleadings alone, including whether a statement is capable of being defamatory, the nature of the speaker and the level of constitutional protections afforded the statement, and whether actual malice exists, if the level of fault the plaintiff must show is actual malice.

6. The trial court erred by ruling that Michigan law does not adequately address the situation presented in this case. Michigan's procedures for a protective order, when combined with Michigan's procedures for summary disposition, adequately protect a defendant's First Amendment interests in anonymity.

7. Trial courts may use protective orders to protect witnesses' First Amendment rights. A variety of sound or valid reasons may support a trial court's decision to limit discovery, including that discovery implicates a party's First Amendment interests. The court, when determining whether to issue a protective order, may consider the weight of a defendant's First Amendment rights against a plaintiff's discovery request.

8. The trial court erred by concluding that Michigan law does not adequately protect Doe 1's interests and by adopting and applying foreign law. The trial court's findings and conclusions in support of its position were erroneous. The trial court failed to state a reason why it denied Doe 1's alternative request for a protective order. The order of the trial court is reversed and the case is remanded to the trial court for it to consider whether good cause exists to support the request for a protective order.

9. Not all accusations of criminal activity are automatically defamatory. Defamation per se raises the presumption that a person's reputation has been damaged. In that instance, a plaintiff's failure to prove damages for certain charges of misconduct would not require dismissal of the suit.

10. Whether a plaintiff has alleged fault, which may require the plaintiff to show actual malice or negligence depending on the status of the speaker and the topic of the speech, concerns an element separate from whether the plaintiff has alleged defamation per se. The trial court erred by concluding that Cooley would not have to prove fault or other elements because the statements were defamatory per se.

11. The trial court should determine on remand whether it has the power to quash a subpoena issued in California. If not, or if it

declines to do so, the trial court should apply Michigan law and determine if Doe 1 is entitled to an order protecting his identity.

Reversed and remanded.

BECKERING, J., concurring in part and dissenting in part, agreed with the majority that the only remedy available to Doe 1, because his identity is known by Cooley, is a protective order and that, on remand, the trial court must evaluate the necessity of a protective order. Cooley's knowledge of Doe 1's identity did not render his appeal moot. Judge BECKERING does not believe that Michigan law adequately protects a defendant's First Amendment right to speak anonymously when the defendant's identity is sought in a defamation action. Because the court rules do not guarantee that an anonymous defendant will have an opportunity to protect his or her identity before a plaintiff alleging defamation engages in discovery to learn the defendant's identity, the Court of Appeals must adopt a standard that will protect a defendant's right to speak anonymously. A modified *Dendrite* standard should be adopted to strike the appropriate balance between an anonymous defendant's First Amendment rights and a plaintiff's right to learn the defendant's identity in order to seek redress for alleged defamatory statements. Under this standard, a plaintiff alleging defamation may engage in discovery to learn an anonymous defendant's identity only after (1) the plaintiff has made reasonable attempts to notify the defendant and then has given the defendant a reasonable opportunity to defend against the discovery request, (2) the plaintiff has presented the trial court with prima facie evidence sufficient to support each element of its cause of action, other than the elements dependent on the defendant's identity, and (3) the strength of the plaintiff's prima facie case and the necessity of disclosure of the defendant's identity is determined to outweigh the defendant's right to speak anonymously.

1. APPEAL — MOOT ISSUES.

A matter is moot if a ruling by the Court of Appeals cannot for any reason have a practical legal effect on the existing controversy; the Court may, even if the issue is moot, consider a legal issue that is one of public significance that is likely to recur, yet evade judicial review.

2. CONSTITUTIONAL LAW — FREEDOM OF SPEECH — UNITED STATES CONSTITUTION — MICHIGAN CONSTITUTION.

The United States and Michigan Constitutions provide the same protections of the freedom of speech; the Court of Appeals does not

interpret the Michigan Constitution's protections of speech more broadly than the federal constitution's protections (US Const, Am I; Const 1963, art 1, § 5).

3. ACTIONS — DISCOVERY — SUBPOENAS — FOREIGN JURISDICTIONS.

A party to an action in Michigan may petition a court in another state to issue a subpoena or equivalent process if necessary to acquire discovery for the action in Michigan; the court in which the action is pending in Michigan may, on a motion by a party, quash or modify the subpoena or enter a protective order (MCR 2.302[C]; MCR 2.305[D]).

4. LIBEL AND SLANDER — DEFAMATION — ACTIONS — PLEADING.

A plaintiff claiming defamation or libel must plead its claim with specificity by identifying the exact language that is alleged to be defamatory or libelous; several questions raised in the action can be resolved on the pleadings alone, including whether a statement is capable of being defamatory, the nature of the speaker and the level of constitutional protections afforded the statement, and, if the level of fault the plaintiff must show is actual malice, whether actual malice exists.

5. MOTIONS AND ORDERS — PROTECTIVE ORDERS — CONSTITUTIONAL LAW — FIRST AMENDMENT.

Trial courts may use protective orders to protect witnesses' First Amendment interests; a trial court may consider the weight of a defendant's First Amendment rights against a plaintiff's discovery request when determining whether to issue a protective order.

*Miller, Canfield, Paddock and Stone, PLC* (by *Michael P. Coakley* and *Paul D. Hudson*), for Thomas M. Cooley Law School.

*Barbara Harvey, John T. Hermann,* and *Paul Alan Levy* for John Doe 1.

Amici Curiae:

*Boyle Burdett* (by *H. William Burdett, Jr.*) and *Daniel S. Korobkin, Michael J. Steinberg,* and *Kary L. Moss* for American Civil Liberties Union Fund of Michigan.

*Butzel Long* (by *Robin Luce Herrmann, Joseph E. Richotte, Jonathan F. Jorissen,* and *Jennifer A. Dukarski*) for Michigan Press Association, Gannett Co., Inc., Scripps Media, Inc., The Detroit News, The Macomb Daily, and The Rail.

Before: WHITBECK, P.J., and METER and BECKERING, JJ.

WHITBECK, P.J. This appeal concerns the complicated interplay between First Amendment protections of the freedom of speech and the Michigan Court Rules concerning discovery. Plaintiff, Thomas M. Cooley Law School (Cooley), filed a complaint in the Ingham Circuit Court against defendant John Doe 1 (Doe 1) and others, alleging, in part, defamation arising from statements that Doe 1 made, under a pseudonym, on a website that criticized Cooley. Doe 1 moved in the trial court to (1) quash a subpoena that Cooley obtained in California seeking his identity, and (2) issue a protective order. Doe 1 now appeals by leave granted an order of the trial court denying his motion to quash the California subpoena. He argues that the First Amendment's protections for anonymous free speech shield his identity. We reverse and remand.

### I. FACTS

#### A. BACKGROUND FACTS

Doe 1 created an Internet website at Weebly.com, owned by California-based Weebly, Inc. (Weebly), using the pseudonym "Rockstar05."[1] Doe 1 titled the website "THOMAS M. COOLEY LAW SCHOOL SCAM."

---

[1] Though this pseudonym is gender neutral and "John Doe 1" may refer to an unknown man or woman, the parties referred to Doe 1 by the masculine gender in their briefs and oral arguments. We will also use the masculine gender.

Describing himself as a former student of Cooley, Doe 1 stated that "Cooley is without a doubt one of the three worst law schools in the United States . . . and [is] considered THE BIGGEST JOKE of all law schools amongst other law students." In the body of the post, Doe 1 listed "multiple reasons for this," including: (1) Cooley's "open door" policy, (2) Cooley's attrition rate and administrative policies, (3) "the 'Cooley Rankings' " (4) that Cooley "IS A DIPLOMA MILL," and (5) that Cooley's graduates are unemployed. Doe 1 claimed that he would "elaborate and address each of these [claims] in order, backed by statistics and facts, painting a real picture of what Cooley is really like[.]"

Doe 1 arranged the body of his blog in an outline format, comprised of headings followed by external website links and Doe 1's commentary. Doe 1's commentary frequently included capital letters, multiple instances of incorrect punctuation, expletives, advice, misspellings, and references to pop culture. Doe 1 permitted visitors to post their own comments on the website, and frequently responded to the commentators. After April 1, 2011, however, he began to "filter" comments, noting that he would delete "any stupid or irrelevant comments or personal attacks[.]"

### B. PROCEDURAL HISTORY BELOW

Cooley filed the complaint in the Ingham Circuit Court on July 14, 2011, against several John Doe defendants. Cooley's complaint against Doe 1 alleged that he made defamatory accusations that Cooley and its representatives "are 'criminals' and have committed 'fraud,' " that Cooley deceived and provided false information to attain business, and that Cooley "uses its clout to 'prey' on current and prospective students, stealing their tuition money to 'become more rich.' " On

July 25, 2011, Cooley petitioned the Superior Court of California, County of San Francisco, to issue a subpoena to Weebly. On August 3, 2011, the California court issued a subpoena to Weebly, ordering it to produce documents that included Doe 1's user account information. On August 5, 2011, Doe 1 filed a motion in the Ingham Circuit Court, requesting that it quash any outstanding subpoenas to Weebly or, alternatively, issue a protective order limiting or restricting Cooley's use or disclosure of his identifying information.

On August 9, 2011, Weebly's chief of customer satisfaction promised Doe 1's attorney that he would not disclose Doe 1's identifying information until August 22, to allow him to obtain a ruling on his motion to quash. But on August 17, 2011, another Weebly employee released Doe 1's identifying information to Cooley. On August 18, 2011, Cooley requested that Doe 1 withdraw his motion to quash on the basis that the motion was now moot; Doe 1 declined.

On August 29, 2011, Cooley filed an amended complaint that identified Doe 1 by his legal name. Doe 1 supplemented his motion to quash and moved in the trial court to strike the identifying information, arguing that Cooley violated Michigan discovery rules by using information that Doe 1 claimed was protected.

### C. THE TRIAL COURT'S DECISION

In September 2011, the trial court heard arguments on Doe 1's motion to quash. Doe 1's counsel agreed that the motion to quash was moot because Weebly had disclosed the information, but clarified that he was "seeking this motion as an alternative, a protective order." The trial court provisionally ruled that Weebly might have inadvertently disclosed the information for the purposes of MCR 2.302(B)(7). It struck Cooley's

amended complaint and ordered Cooley not to initiate further discovery or disclose the information pending its final decision on the motion. On October 3, 2011, the trial court ruled that the motion to quash was not moot, reasoning that its ruling on Doe 1's motion to strike placed the parties back in the positions they occupied before Weebly disclosed the information.

On October 24, 2011, the trial court heard continued arguments on Doe 1's motion to quash. After extensive reasoning, the trial court determined that there was no Michigan law on point and examined decisions from other jurisdictions, including *Dendrite Int'l, Inc v Doe, No 3*[2] and *Doe No 1 v Cahill*.[3] The trial court determined that, in order to adequately protect Doe 1's interests in remaining anonymous, it must balance those interests against Cooley's interests in holding Doe 1 accountable for alleged defamation.

The trial court adopted and applied the *Dendrite* analysis. Under that analysis, it ruled that Doe 1 had been notified and that Cooley had sufficiently alleged slander per se. It ruled that statements that are slanderous per se are not entitled to First Amendment protection, and thus Cooley would not have to prove actual malice. The trial court's order denied Doe 1's motion to quash, declined to grant him a protective order for "the reasons stated on the record," and allowed Cooley to use the information that it discovered from Weebly. However, the trial court stayed its ruling pending Doe 1's appeal to this Court.

On November 29, 2011, Doe 1 filed an application for leave to appeal the trial court's order, which this Court granted in an unpublished order, entered May 25, 2012 (Docket No. 307426). On July 11, 2012, Cooley moved to

---

[2] *Dendrite Int'l, Inc v Doe, No 3*, 342 NJ Super 134; 775 A2d 756 (2001).

[3] *Doe No 1 v Cahill*, 884 A2d 451 (Del, 2005).

dismiss this appeal as moot. This Court denied Cooley's motion to dismiss in an unpublished order, entered July 20, 2012 (Docket No. 307426).

## II. MOOTNESS

### A. STANDARD OF REVIEW

This Court reviews de novo questions of law.[4]

### B. LEGAL STANDARDS

Michigan courts exist to decide actual cases and controversies, and thus will not decide moot issues.[5] A matter is moot if this Court's ruling "cannot for any reason have a practical legal effect on the existing controversy."[6] Even if moot, this Court may consider a legal issue that "is one of public significance that is likely to recur, yet evade judicial review."[7]

### C. APPLYING THE STANDARDS

Cooley argues that the issues presented in this appeal are moot because Weebly disclosed Doe 1's identity to Cooley. Therefore, because Cooley cannot "unlearn" his name, Doe 1's anonymity is destroyed. We conclude that the issues presented in this appeal are not moot because Cooley's knowledge does not prevent this Court from granting relief that will have a practical legal effect on the controversy.

Doe 1 filed his motion to quash the subpoena and issue a protective order before Cooley learned his identity.

---

[4] *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

[5] *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002).

[6] *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010); *Federated Publications, Inc*, 467 Mich at 112.

[7] *Federated Publications, Inc*, 467 Mich at 112.

Although Cooley filed an amended complaint with Doe 1's true name on it, the trial court acted within 10 days to sequester all documents in the lower-court record that contain Doe 1's name. The trial court also ruled that Doe 1's identifying information was inadvertently disclosed for the purposes of MCR 2.302(B)(7). Cooley argues that members of the public may have accessed the trial court documents in that period, but there is no indication that this actually occurred.

Finally, Cooley contended at oral arguments that, because Doe 1 applied for membership in the State Bar of California, his anonymity was destroyed because the State Bar of California is aware of his involvement in this suit. But it was also stated at oral arguments that applications to the State Bar of California are confidential. Thus, Doe's application alone would not reveal his identity to the public. There are simply no indications that Doe 1's anonymity was destroyed or that this Court is unable to fashion the relief Doe 1 seeks.

Further, whether and in what fashion the identity of an anonymous Internet speaker can be discovered or protected under Michigan law is a publically significant issue concerning the First Amendment. In this age of Internet blogging, this issue is likely to reoccur. And if the disclosure of a John Doe's name to a handful of attorneys and court officers is sufficient to render this issue moot, the issue would also be likely to evade judicial review. We conclude that we may, and should, reach the merits of the issues on appeal.

### III. THE FIRST AMENDMENT AND ANONYMOUS SPEECH

#### A. FREEDOM OF SPEECH

The First Amendment of the United States Constitution provides that "Congress shall make no law . . .

abridging the freedom of speech . . . ."[8] The Michigan Constitution provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech . . . ."[9] The United States and Michigan Constitutions provide the same protections of the freedom of speech, and this Court does not interpret the Michigan Constitution's protections of speech more broadly than the federal constitution's protections.[10] Thus, this Court may consider federal authority when interpreting the extent of Michigan's protections of free speech.[11]

The United States Supreme Court has held that the federal constitution protects speech over the Internet to the same extent as speech over other media.[12] The United States Supreme Court has also determined that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment."[13]

### B. DEFAMATORY SPEECH

But a defendant's right to speak freely is not absolute.[14] The First Amendment does not protect "certain

---

[8] US Const, Am I.

[9] Const 1963, art 1, § 5.

[10] *Woodland v Mich Citizens Lobby*, 423 Mich 188, 208; 378 NW2d 337 (1985); *In re Contempt of Dudzinski*, 257 Mich App 96, 100; 667 NW2d 68 (2003).

[11] *In re Contempt of Dudzinski*, 257 Mich App at 100.

[12] *Reno v American Civil Liberties Union*, 521 US 844, 870; 117 S Ct 2329; 138 L Ed 2d 874 (1997).

[13] *McIntyre v Ohio Elections Comm*, 514 US 334, 342; 115 S Ct 1511; 131 L Ed 2d 426 (1995).

[14] *Chaplinsky v New Hampshire*, 315 US 568, 571; 62 S Ct 766; 86 L Ed 1031 (1942).

categories of speech, including defamation[.]"[15] Generally, " '[a] communication is defamatory if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' "[16]

### C. STANDARDS PROTECTING ANONYMOUS SPEECH IN OTHER JURISDICTIONS: *DENDRITE, CAHILL,* AND OTHER STANDARDS

To very different extents, courts in other jurisdictions have attempted to balance a defendant's right to speak anonymously against a plaintiff's interest in discovering the information necessary to prosecute its defamation claims.

In *Dendrite*, a New Jersey intermediate appellate court determined that, in order to adequately protect a defendant's interests in anonymous commercial speech, it must adopt a four-part approach to limit discovery.[17] The New Jersey court determined that the plaintiff must: (1) show that the defendant is a person or entity who could be sued, (2) make a good-faith effort to serve process on the defendant, (3) establish that the plaintiff's suit could withstand a motion to dismiss, and (4) establish that there is a reasonable likelihood that discovery would lead to identifying information about the defendant that would make service of process possible.[18] It determined that the purpose of this approach was to prevent plaintiffs from attempting to

---

[15] *Ashcroft v Free Speech Coalition,* 535 US 234, 245-246; 122 S Ct 1389; 152 L Ed 2d 403 (2002); *Burns v Detroit (On Remand),* 253 Mich App 608, 621; 660 NW2d 85 (2002).

[16] *Rouch v Enquirer & News of Battle Creek (After Remand),* 440 Mich 238, 251; 487 NW2d 205 (1992), quoting 3 Restatement Torts, 2d, § 559, p 156.

[17] *Dendrite Int'l, Inc,* 342 NJ Super at 156-157.

[18] *Id.* at 151-152.

harass, intimidate, or silence anonymous critics on the public forums of the Internet.[19]

Examining the New Jersey court's decision in *Dendrite*, in *Cahill*, the Delaware Supreme Court also described and adopted this standard to protect political speech.[20] The Delaware court concluded that, under *Dendrite*, it was necessary for a plaintiff alleging defamation to show four things before it could identify an anonymous political speaker on the Internet: (1) that the plaintiff tried to notify the defendant of the action in order to allow the defendant to defend, (2) that the plaintiff alleged the exact defamatory statements made by the anonymous poster, (3) that the plaintiff could survive a motion for summary judgment on the prima facie claim, and (4) that the balance of equities between the defendant's First Amendment rights and the strength of the prima facie case indicates that the defendant's identity should be disclosed.[21] The Delaware court concluded that elements two and four were unnecessary because they are subsumed in that state's summary judgment standards; that is, a plaintiff would have to prove each of these elements, but a "four-part" standard was unnecessary because elements two and four were necessarily a part of element three.[22]

The United States Court of Appeals for the Ninth Circuit, the only federal circuit court to consider this issue, held only that the adoption and application of the *Dendrite* or *Cahill* standards to deny a party's writ for mandamus is not clearly erroneous.[23] It recognized that "a few courts have declined to adopt a new or different

---

[19] *Id.* at 156.

[20] *Cahill*, 884 A2d at 460.

[21] *Id.*

[22] *Id.* at 461.

[23] *In re Anonymous Online Speakers*, 661 F3d 1168, 1177 (CA 9, 2011).

standard," or have applied heightened standards only to the identification of nonparties.[24] It determined that "the details of fashioning the appropriate scope and procedures for disclosure of the identity of the anonymous speakers" is a matter for the district courts to determine.[25]

Finally, an Illinois court has decided that it was not necessary to adopt additional standards in light of the procedural protections in place under Illinois court rules. In *Maxon v Ottawa Publishing Co*, the Illinois Appellate Court determined whether the plaintiff could discover the identity of blog posters.[26] It decided that it was not necessary to adopt the *Dendrite* or the *Cahill* standards because Illinois court rules required the complainant to plead defamation with particularity, and the complaint was subject to a motion that tested its legal sufficiency on the basis of the facts as pleaded.[27] The *Maxon* court reasoned that the *Dendrite* "hypothetical motion for summary judgment" was unnecessary because the Illinois processes were similar to the standards applied by *Dendrite* and *Cahill* and adequately protect the defendant's interests.[28]

## IV. OVERVIEW OF MICHIGAN PROCEDURAL RULES

In Michigan, discovery is available as soon as a party commences an action.[29] In a civil action, a party commences the action by filing a complaint with a court.[30] A

---

[24] *Id.* at 1175-1176.

[25] *Id.* at 1177.

[26] *Maxon v Ottawa Publishing Co*, 402 Ill App 3d 704, 706; 929 NE2d 666 (2010).

[27] *Id.* at 712.

[28] *Id.* at 714-715.

[29] MCR 2.302(A)(1).

[30] MCR 2.101(B).

summons is issued that is to be served on the defendant.[31] Generally, a summons expires 91 days after the date the complaint is filed.[32] Upon the expiration of the summons, the case is deemed dismissed with regard to a defendant who has not been served, unless the defendant has submitted to the court's jurisdiction.[33] A party may "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"[34] Michigan follows a policy of open and broad discovery.[35]

## A. SUBPOENAS

A party may acquire information from another party by subpoenaing them to provide a deposition, other documents, or tangible things.[36] A party may petition a court in another state to issue a subpoena or equivalent process if necessary to acquire discovery for an action in Michigan.[37] On a motion by a party, the "court in which the action is pending" may quash or modify the subpoena, or enter a protective order.[38]

## B. PROTECTIVE ORDERS

Despite Michigan's broad discovery policy, a trial court should protect parties from excessive, abusive, or

---

[31] MCR 2.102(A).

[32] MCR 2.102(D).

[33] MCR 2.102(E)(1).

[34] MCR 2.302(B)(1); see *King v Reed*, 278 Mich App 504, 517; 751 NW2d 525 (2008).

[35] *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77 (2011).

[36] MCR 2.305(A)(1) and (2).

[37] MCR 2.305(D).

[38] MCR 2.302(C).

irrelevant discovery requests.[39] Thus, a party may bring a motion in a trial court for a protective order:

> On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following orders:
>
> (1) that the discovery not be had;
>
> (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> * * *
>
> (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;
>
> (5) that discovery be conducted with no one present except persons designated by the court[.][40]

A trial court may also seal court records on a motion of a party if it finds good cause to do so and there are no less restrictive means to protect the party's interests.[41]

### C. MOTIONS FOR SUMMARY DISPOSITION

Under MCR 2.116(C)(8), a party may move for summary disposition when the opposing party has failed to state a claim on which relief can be granted. This tests the legal basis of the complaint on the pleadings alone.[42] The trial court must accept the factual allegations in the complaint as true, and construe them in the light

---

[39] *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005).

[40] MCR 2.302(C).

[41] MCR 8.119(I)(1).

[42] MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999).

most favorable to the nonmoving party.[43] The trial court will grant the motion if the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify the opposing party's right to recovery.[44]

The availability and application of summary disposition is important in this case because summary disposition is an essential tool to protect First Amendment rights.[45] To eventually succeed on a claim for defamation, a plaintiff must show:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.[46]

A plaintiff must also comply with constitutional requirements that depend on " 'the public- or private-figure status of the plaintiff, the media or nonmedia status of the defendant, and the public or private character of the speech.' "[47]

A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory.[48]

---

[43] *Maiden*, 461 Mich at 119.

[44] *Id.*

[45] *Tomkiewicz v Detroit News, Inc*, 246 Mich App 662, 666; 635 NW2d 36 (2001); *Ireland v Edwards*, 230 Mich App 607, 619; 584 NW2d 632 (1998).

[46] *Tomkiewicz*, 246 Mich App at 666-667; *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005).

[47] *Rouch*, 440 Mich at 251-252, quoting *Locricchio v Evening News Ass'n*, 438 Mich 84, 118; 476 NW2d 112 (1991).

[48] *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc*, 197 Mich App 48, 52, 57; 495 NW2d 392 (1992).

For a claim of libel, a plaintiff must plead " *'the very words of the libel . . . .'* "[49] Because a plaintiff must include the words of the libel in the complaint, several questions of law can be resolved on the pleadings alone, including: (1) whether a statement is capable of being defamatory,[50] (2) the nature of the speaker and the level of constitutional protections afforded the statement,[51] and (3) whether actual malice exists, if the level of fault the plaintiff must show is actual malice.[52]

### V. MICHIGAN DISCOVERY RULES ADEQUATELY PROTECT FIRST AMENDMENT INTERESTS IN ANONYMOUS SPEECH

#### A. STANDARD OF REVIEW

This Court reviews de novo issues of constitutional law.[53] Generally, this Court reviews for an abuse of discretion a trial court's decision on a motion for discovery.[54] A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes,[55] or when it makes an error of law.[56]

Because this case raises First Amendment issues, we are also "obligated to independently review the entire

---

[49] *Id.* at 53, quoting *De Guvera v Sure Fit Prod*, 14 Mich App 201, 206; 165 NW2d 418 (1968).

[50] See *Ireland*, 230 Mich App at 619.

[51] See *New Franklin Enterprises v Sabo*, 192 Mich App 219, 221-222; 480 NW2d 326 (1991); see also *Hodgins v Times Herald Co*, 169 Mich App 245, 256-257; 425 NW2d 522 (1988).

[52] *Ireland*, 230 Mich App at 622.

[53] *In re Contempt of Dudzinski*, 257 Mich App at 99.

[54] *Augustine*, 292 Mich App at 419.

[55] *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003); *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

[56] *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006); *In re Waters Drainage Dist*, 296 Mich App 214, 220; 818 NW2d 478 (2012).

record to ensure that the lower court's judgment 'does not constitute a forbidden intrusion of the field of free expression.' "[57]

### B. APPLICATION OF MICHIGAN DISCOVERY RULES TO THIS CASE

In a lengthy ruling from the bench, the trial court ruled that Michigan law does not address the situation in this case. It therefore adopted the *Dendrite* standards. Applying those standards, it determined not to quash the subpoena.

We disagree with the trial court's conclusion that Michigan law does not adequately address this situation. We conclude that Michigan's procedures for a protective order, when combined with Michigan's procedures for summary disposition, adequately protect a defendant's First Amendment interests in anonymity.

Under a properly filed motion for a protective order, a trial court may order, among other things, "that the discovery not be had" or that it "may be had only on specified terms and conditions[.]"[58] In the context of our court rules, "[g]ood cause simply means a satisfactory, sound or valid reason[.]"[59] A trial court has broad discretion to determine what constitutes "good cause."[60] A variety of sound or valid reasons may support a trial court's decision to limit discovery, including that discovery implicates a party's First Amendment interests.

Trial courts may use protective orders to protect

---

[57] *Maldonado*, 476 Mich at 388-389, quoting *Gentile v State Bar of Nevada*, 501 US 1030, 1038; 111 S Ct 2720; 115 L Ed 2d 888 (1991) (additional quotation marks and citations omitted).

[58] MCR 2.302(C)(1) and (2).

[59] *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012) (quotation marks and citation omitted).

[60] See *id.* at 319-320.

witnesses' First Amendment interests. For instance, in *Bloomfield Charter Twp v Oakland Co Clerk*, the township sought to depose persons who had signed petitions, and the trial court granted a protective order that prevented the township from deposing the signatories.[61] This Court held that the trial court did not abuse its discretion when it issued the protective order.[62] We reasoned that the signatories had a "powerful interest in participating in political speech protected by the First Amendment without fear of subsequently facing adversarial questions under oath," and that the township's reasons for requesting discovery were baseless.[63]

We recognize that the Michigan Supreme Court subsequently overruled *Bloomfield Charter Twp*, though on different grounds, and thus it is not binding precedent.[64] But the case illustrates that Michigan courts have recognized that a person's right to freedom of speech may be good cause for a trial court to issue a protective order.

Protective orders are very flexible. A trial court may tailor the scope of its protective order to protect a defendant's First Amendment interests until summary disposition is granted. For instance, a trial court may order (1) that a plaintiff not discover a defendant's identity, or (2) that as a condition of discovering a defendant's identity, a plaintiff not disclose that identity until after the legal sufficiency of the complaint itself is tested.

---

[61] *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 35; 654 NW2d 610 (2002), overruled on other grounds by *Stand Up For Democracy v Secretary of State*, 492 Mich 588 (2012).

[62] *Bloomfield Charter Twp*, 253 Mich App at 38.

[63] *Id.*

[64] *Kidder v Ptacin*, 284 Mich App 166, 170; 771 NW2d 806 (2009).

Comparing the foreign law that the trial court adopted to existing Michigan law, we disagree with the trial court's determination that Michigan law cannot adequately protect a defendant's interests in anonymous speech. Under *Cahill*, which the Ninth Circuit recognized as providing the "strictest test,"[65] the plaintiff must (1) allege the exact defamatory statements, (2) show that the plaintiff made reasonable efforts to give the defendant notice of the action, (3) show that the plaintiff's case could survive a motion for summary disposition on the prima facie case, and (4) show that the balance of equities between the defendant's interests and its interests weighed in its favor.[66]

But under Michigan law, the plaintiff must allege the exact defamatory statements. The plaintiff will have to survive an actual motion for summary disposition on its claims under MCR 2.116(C)(8). And the trial court may consider the weight of the defendant's First Amendment rights against the plaintiff's discovery request when determining whether to issue a protective order. Thus, the *Dendrite* and *Cahill* standards largely overlap with Michigan's combined safeguards of a protective order under MCR 2.302 and the summary disposition standards and procedures under MCR 2.116(C)(8).

To the extent that Doe 1 urges us to adopt *Dendrite* because it more adequately protects other interests or is better public policy, we decline to do so. Doe 1 argues that any less stringent standards may chill Internet criticisms because of a defendant's fear of being required to defend against a lawsuit for long enough to have the trial court dismiss it. Doe 1 also argues that the plaintiff in a defamation case may sue the defendant solely to subpoena the defendant's Internet provider for

---

[65] *In re Anonymous Online Speakers*, 661 F3d at 1177.

[66] *Cahill*, 884 A2d at 460-461.

identifying information in order to acquire leverage for extra-judicial retaliation. We have already concluded that Michigan rules of civil procedure adequately protect Doe 1's constitutional interests. We decline to reach beyond what is constitutionally necessary in order to judicially create anti-cyber-SLAPP legislation.[67] Such decisions of public policy are the province of our Legislature.[68] And the writing, or rewriting, of our discovery and summary disposition rules is the province of the Michigan Supreme Court.

### C. THE TRIAL COURT DID NOT PROPERLY APPLY MICHIGAN LAW

We conclude that the trial court abused its discretion, which requires reversal. A trial court by definition abuses its discretion when it inappropriately interprets and applies the law.[69] First, the trial court erroneously concluded that Michigan law does not adequately protect Doe 1's interests, and then it erroneously adopted and applied foreign law. Second, the trial court's findings and conclusions in support of its position were erroneous. Third, the trial court did not state any reason supporting its decision to deny Doe 1's alternative request for a protective order.

After adopting the *Dendrite* and *Cahill* standards as Michigan law, the trial court appears to have considered only two alternatives: (1) that the subpoena should be quashed and Cooley's case dismissed, or (2) that the subpoena should not be quashed and the case should proceed with Doe 1's name on the complaint. But Michigan law does not address only these polar oppo-

---

[67] SLAPP is an acronym for "strategic lawsuit against public participation." Black's Law Dictionary (7th ed).

[68] *Johnson v Recca*, 492 Mich 169, 196-197; 821 NW2d 520 (2012).

[69] *Giovannini*, 271 Mich App at 417; *In re Waters Drainage Dist*, 296 Mich App at 220.

sites. Doe 1 also asked for a protective order under MCR 2.302(C). The trial court's order indicates that it denied Doe 1's requests for a protective order "for the reasons stated on the record." But the trial court did not state any reasons on the record to deny the protective order. The trial court appears not to have considered whether or to what extent to protect Doe 1's identity after it determined not to quash the subpoena. On remand, the trial court should consider whether good cause exists to support Doe 1's request for a protective order.

Next, the trial court ruled that defamatory statements per se were not entitled to First Amendment protections. The trial court was incorrect. Not all accusations of criminal activity are automatically defamatory.[70] To put it simply, defamation per se raises the presumption that a person's reputation has been damaged. In that instance, a plaintiff's failure to prove damages for certain charges of misconduct would not require dismissal of the suit.[71] Whether a plaintiff has alleged fault—which may require the plaintiff to show actual malice or negligence, depending on the status of the speaker and the topic of the speech—concerns an element separate from whether the plaintiff has alleged defamation per se. Thus, the trial court erroneously concluded that Cooley would not have to prove fault or other elements because the statements were defamatory per se.

More importantly, this erroneous determination was central to the considerations the trial court may balance when determining whether to issue a protective order. As noted above, a trial court may consider that a party seeking a protective order has alleged that the interests

---

[70] See *Kevorkian v American Med Ass'n*, 237 Mich App 1, 12-13; 602 NW2d 233 (1999).

[71] *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 727-728; 613 NW2d 378 (2000).

he or she is asking the trial court to protect are constitutionally shielded.[72] But the trial court need not, and should not, confuse the issues by making a premature ruling—as though on a motion for summary disposition—while considering whether to issue a protective order before the defendant has filed a motion for summary disposition. The trial court should only consider whether good cause exists to issue a protective order, and to what extent to grant relief under MCR 2.302(C).

Doe 1 urges this Court to rule that Cooley has not pleaded legally sufficient claims for defamation and tortious interference with a business relationship. We conclude that Doe 1's motion for a protective order did not present the appropriate time or place to do this. These rulings are best made in the context of a motion for summary disposition, when the trial court is testing the legal sufficiency of the complaint. The trial court's only concerns during a motion under MCR 2.302(C) should be whether the plaintiff has stated good cause for a protective order and to what extent to issue a protective order if it determines that one is warranted.

### D. THE EXTREME CASE

We recognize that this opinion does not address the extreme case, a case that Doe 1 would like us to consider. The extreme case is one in which a plaintiff in a defamation case sues the defendant *solely* to subpoena the defendant's Internet provider for identifying information in order to retaliate against the defendant in some fashion outside a court action.

A simple hypothetical illustrates this situation. Assume that plaintiff XYZ company sues defendant Rich-

---

[72] See *Bloomfield Charter Twp*, 253 Mich App at 38.

ard Moe who writes an anonymous blog on the Internet that is often critical of XYZ. Assume further that XYZ does not have any real expectation of damages, but suspects that Moe is employed or paid by a competitor and is suing simply to learn Moe's name in order to silence him through legal (we hasten to add) but extrajudicial means.

Under the Michigan rules, as we outlined above, XYZ could sue Moe and then immediately pursue discovery against the Internet provider (the counterpart to Weebly in this action), during the 91-day service-of-summons period provided in the court rules, to obtain Moe's real name. But XYZ does not—and indeed could not, because it does not at that point know Moe's name—serve Moe with process. Thus, Moe would be totally unaware of the suit against him and could not protect his name in court. He will only know of the suit and XYZ's actions when he is "outed" through discovery, and his employer may discharge him if XYZ retaliates with an aggressive ad campaign based on Moe's real identity and affiliation with the competitor.

It is this extreme case that both *Dendrite* and *Cahill*, through their notice provisions, address by providing some protection to persons in Moe's situation. But, we emphasize, this is not the case before us. Here, Doe 1 knew relatively early on that Cooley had filed suit against him and was attempting to ascertain his real name through its subpoena to Weebly. And Doe 1 has been successful, at least to date, in preventing a public disclosure of his name. We therefore decline, under the well-recognized concept of judicial restraint,[73] to go beyond the facts that are before us in this case. We do

---

[73] See Occam's razor, a principle of parsimony, which may be paraphrased as providing that simpler explanations are, other things being equal, generally better than more complex ones.

not issue advisory opinions, nor does the Supreme Court, except in very limited circumstances not present here.[74] We believe that our legal system in Michigan is capable of responding, either retroactively through litigation or prospectively through Supreme Court rule-making, if and when the extreme case arises.

### E. COOLEY'S ALTERNATIVE GROUND FOR AFFIRMANCE

Cooley argues as alternative grounds for affirmance that a Michigan court cannot quash a subpoena issued by a California court. Cooley argues that the trial court must look to the law of the state in which the subpoena is pending to determine whether it can quash the subpoena. Under California law, Cooley therefore argues, Doe 1 should have filed his motion to quash and motion for a protective order in "the county in which discovery is to be conducted . . . ."[75] The trial court did not consider this argument, and the parties did not extensively brief this issue.

However, Cooley's argument appears to confuse MCR 2.305(D), under which Michigan allows a party to a Michigan action to petition a foreign court to issue a subpoena to require a person to give a deposition, with MCR 2.302(C). Doe 1 petitioned in the trial court for a protective order under MCR 2.302(C), which provides that "the court *in which the action is pending* may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

Thus, even if the trial court did not have the power to quash the California subpoena, the trial court had the

---

[74] Const 1963, art 3, § 8; see *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000).

[75] Cal Code Civ Proc 2029.600.

power to issue a protective order under Michigan court rules, because the action is pending in the Ingham Circuit Court. Therefore, even if we determined that the trial court did not have the power to quash the California subpoena issued under MCR 2.305(D), it would still be necessary for this Court to reverse and remand for the trial court to determine whether justice requires it to issue a protective order. Finally, a decision of the trial court would aid our analysis on this issue. We decline to affirm on the ground that the trial court could not quash a California subpoena.

VI. CONCLUSION

We conclude that the trial court abused its discretion when it denied Doe 1's motion for a protective order after it adopted and applied foreign law. Michigan law adequately protects Doe 1's free speech interests in this case. On remand, the trial court should determine whether it has the power to quash a California subpoena. If not, or if it declines to do so, the trial court should apply Michigan law to determine whether Doe 1 is entitled to an order protecting his identity.

Reversed and remanded. We do not retain jurisdiction.

METER, J., concurred with WHITBECK, P.J.

BECKERING, J. (*concurring in part and dissenting in part*). With the advent of the Internet and the accompanying easy, rapid, and global exchange of information and opinions, new legal issues have come to the forefront. This case presents one of those new legal issues and involves a matter of first impression in Michigan. How do we balance a defendant's First Amendment right to speak anonymously and a plaintiff's right to

learn an anonymous defendant's identity in order to seek redress for the defendant's alleged defamatory statements? In this case, plaintiff, Thomas M. Cooley Law School (Cooley), alleges that defendant John Doe 1 (Doe 1), a former Cooley student, defamed it in his weblog post titled "Thomas M. Cooley Law School Scam." Cooley sued Doe 1 and others for defamation and tortious interference. It then obtained a subpoena from a California court that ordered Weebly, Inc. (Weebly), the website host for Doe 1's weblog, to produce documents that included Doe 1's user account information. Doe 1 learned that he had been sued after reading about Cooley's lawsuit in the media. He moved in the trial court to quash the subpoena or, in the alternative, for a protective order limiting or restricting Cooley's use of any information obtained pursuant to the subpoena. Unfortunately, before the trial court resolved the motion to quash, and through no apparent fault of either party, Weebly disclosed Doe 1's user account information to Cooley. Cooley now knows Doe 1's identity.

I agree with my colleagues in the majority that the only remedy available to Doe 1, because his identity is known by Cooley, is a protective order and that the trial court, on remand, must evaluate the necessity of a protective order. As noted by the majority, and contrary to Cooley's argument, Cooley's knowledge of Doe 1's identity does not render Doe 1's appeal moot. It is possible to fashion a remedy, a protective order, if merited, that will have a practical legal effect on the controversy.[1] A protective order can prevent Doe 1's identity from being disclosed to others. I also agree with the majority that we may, and should, review the issue

---

[1] *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010).

whether Michigan law adequately protects the respective rights of plaintiffs and defendants in the complicated interplay between the First Amendment right of anonymous free speech and a person's right to know the identity of his or her defamer. The issue is a matter of public significance that is likely to recur, yet evade judicial review.[2]

Where I diverge from the majority is in its conclusion that Michigan law adequately protects a defendant's right to anonymous free speech except for the "extreme" case. Because an anonymous defendant cannot undertake any efforts to protect against disclosure of his or her identity until the defendant learns about the lawsuit—which may well be too late given that discovery is available to a plaintiff as soon as the action is commenced—we, like numerous appeal courts in other jurisdictions, must adopt a formal procedure that balances the rights of plaintiffs and defendants. The majority of jurisdictions that have addressed this issue have adopted the standard of either *Dendrite Int'l, Inc v Doe, No 3*[3] or *Doe No 1 v Cahill*.[4] These standards require, in part, that a plaintiff alleging defamation present the trial court with prima facie evidence on the elements of its defamation claim before it is allowed to discover the anonymous defendant's identity. I would adopt a modified version of the *Dendrite* standard.

### I. THE FIRST AMENDMENT AND DEFAMATION

#### A. THE RIGHT TO FREE SPEECH

The First Amendment of the United States Constitution provides: "Congress shall make no law . . .

---

[2] *Id.*

[3] *Dendrite Int'l, Inc v Doe, No 3*, 342 NJ Super 134; 775 A2d 756 (2001).

[4] *Doe No 1 v Cahill*, 884 A2d 451 (Del, 2005).

abridging the freedom of speech . . . ."[5] The Michigan Constitution provides: "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press."[6] Because the right to free speech under the Michigan Constitution is coterminous with the right to free speech under the First Amendment, this Court may use federal authority to interpret Michigan's guarantee of free speech.[7]

The right to free speech includes the right to speak anonymously.[8] Numerous reasons exist for why a person may chose to speak anonymously. "The decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible."[9] Whatever the person's reason to speak anonymously, "the interest in having anonymous works enter the marketplace of ideas unquestionably outweighs any public interest in requiring disclosure as a condition of entry."[10] The right to free speech extends to speech on the Internet.[11]

---

[5] US Const, Am 1. The First Amendment is applicable to the states under the Fourteenth Amendment. *Schneider v State*, 308 US 147, 160; 60 S Ct 146; 84 L Ed 155 (1939).

[6] Const 1963, art 1, § 5.

[7] *In re Contempt of Dudzinski*, 257 Mich App 96, 100; 667 NW2d 68 (2003).

[8] *McIntyre v Ohio Elections Comm*, 514 US 334, 342; 115 S Ct 1511; 131 L Ed 2d 426 (1995).

[9] *Id.* at 341-342.

[10] *Id.* at 342.

[11] *Reno v American Civil Liberties Union*, 521 US 844, 870; 117 S Ct 2329; 138 L Ed 2d 874 (1997) (stating that caselaw from the United States Supreme Court "provide[s] no basis for qualifying the level of First Amendment scrutiny that should be applied to [the Internet]").

B. DEFAMATION

However, "the right of free speech is not absolute at all times and under all circumstances."[12] It provides no protection to defamatory statements.[13] A statement "is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[14]

The elements of a defamation claim are the following:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.[15]

In addition, if the plaintiff is a public official or a public figure, the plaintiff must prove that the alleged defamatory statement was made with actual malice, i.e., that the statement was made with knowledge of its falsity or with reckless disregard of whether the statement was false.[16]

---

[12] *Chaplinsky v New Hampshire*, 315 US 568, 571; 62 S Ct 766; 86 L Ed 1031 (1942).

[13] *Ashcroft v Free Speech Coalition*, 535 US 234, 245-246; 122 S Ct 1389; 152 L Ed 2d 403 (2002); *Beauharnais v Illinois*, 343 US 250, 266; 72 S Ct 725; 96 L Ed 919 (1952) (stating that "[l]ibelous utterances" are not within the scope of constitutionally protected speech).

[14] *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 113; 793 NW2d 533 (2010) (quotation marks and citation omitted).

[15] *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005).

[16] *Garvelink v Detroit News*, 206 Mich App 604, 608; 522 NW2d 883 (1994).

C. BALANCING THE EQUITIES AND RIGHTS OF THE PARTIES:

THE *CAHILL* AND *DENDRITE* STANDARDS

Although this Court has never addressed the relationship between a defendant's right to speak anonymously and a plaintiff's right to learn an anonymous defendant's identity, numerous courts in other jurisdictions have addressed this issue. As mentioned, Doe 1 requests that this Court adopt the standard articulated in either *Dendrite* or *Cahill*.

In *Dendrite*, a New Jersey intermediate appellate court was called on to determine the standard trial courts were to use in evaluating applications to discover the identity of anonymous users of Internet message boards.[17] It adopted a four-part test for trial courts to apply when a plaintiff seeks the disclosure of an anonymous defendant's identity.[18] First, the plaintiff must undertake efforts to notify the anonymous defendant and then withhold action to afford the defendant a reasonable opportunity to oppose the discovery request.[19] According to the court, the notification efforts should include placing a message regarding the discovery request on the Internet message board on which the alleged defamatory statement was posted.[20] Second, the plaintiff must identify the exact statements that it claims were defamatory.[21] Third, the trial court must review the complaint and all the information provided by the plaintiff and determine whether the plaintiff has set forth a prima facie case against the anonymous defendant.[22] The plaintiff's case must not only be able to

---

[17] *Dendrite*, 342 NJ Super at 140.

[18] *Id.* at 141-142.

[19] *Id.* at 141.

[20] *Id.*

[21] *Id.*

[22] *Id.*

withstand a motion to dismiss for failure to state a claim; it must also present the trial court with prima facie evidence sufficient to support each element of the cause of action.[23] Fourth, if the plaintiff has presented a prima facie case, the trial court must balance the anonymous defendant's First Amendment rights against the strength of the plaintiff's prima facie case and the necessity of disclosure of the defendant's identity to allow the plaintiff to proceed.[24]

In *Cahill*, the Delaware Supreme Court was called on to adopt a standard for trial courts to apply when a plaintiff alleging defamation seeks to discover the identity of an anonymous defendant.[25] The court was concerned about adopting a standard that was too low and would chill persons from exercising their right to speak:

> The possibility of losing anonymity in a future lawsuit could intimidate anonymous posters into self-censoring their comments or simply not commenting at all. A defamation plaintiff, particularly a public figure, obtains a very important form of relief by unmasking the identity of his anonymous critics. The revelation of identity of an anonymous speaker "may subject [that speaker] to ostracism for expressing unpopular ideas, invite retaliation from those who oppose her ideas or from those whom she criticizes, or simply give unwanted exposure to her mental processes." Plaintiffs can often initially plead sufficient facts to meet the good faith test applied by the [trial c]ourt, even if the defamation claim is not very strong, or worse, if they do not intend to pursue the defamation action to a final decision. After obtaining the identity of an anonymous critic through the compulsory discovery process, a defamation plaintiff who either loses on the merits or fails to pursue a lawsuit is still free to engage in extra-judicial self-help remedies; more bluntly, the plaintiff can simply seek revenge or retribution.

---

[23] *Id.*

[24] *Id.* at 142.

[25] *Cahill*, 884 A2d at 457.

Indeed, there is reason to believe that many defamation plaintiffs bring suit merely to unmask the identities of anonymous critics. As one commentator has noted, "the sudden surge in John Doe suits stems from the fact that many defamation actions are not really about money." "The goals of this new breed of libel action are largely symbolic, the primary goal being to silence John Doe and others like him." This "sue first, ask questions later" approach, coupled with a standard only minimally protective of the anonymity of defendants, will discourage debate on important issues of public concern as more and more anonymous posters censor their online statements in response to the likelihood of being unmasked.[26]

The Delaware Supreme Court concluded that application of a summary judgment standard, which requires a plaintiff to present evidence sufficient to create a genuine issue of material fact, sufficiently balanced a defendant's right to speak anonymously with a plaintiff's right to protect its reputation.[27] Accordingly, following the New Jersey intermediate appellate court in *Dendrite*, the Delaware Supreme Court held in *Cahill* that, before a defamation plaintiff may discover an anonymous defendant's identity, the plaintiff must support its defamation claim with evidence sufficient to defeat a summary judgment motion.[28] The court, however, did not adopt the complete four-part *Dendrite* standard. It only retained the first and third prongs, holding that a defamation plaintiff (1) must make reasonable efforts to notify the anonymous defendant and then withhold action to afford the defendant an opportunity to oppose the discovery request and (2) must satisfy a summary judgment standard.[29] Accord-

---

[26] *Id.* at 457 (first alteration in original; citations omitted).

[27] *Id.* at 460, 463.

[28] *Id.* at 457, 460, 463.

[29] *Id.* at 460-461.

ing to the court, the notification prong imposed very little burden on a plaintiff alleging defamation while giving an anonymous defendant the opportunity to respond.[30] When a party's First Amendment rights were implicated, the court disfavored ex parte discovery requests that afforded a plaintiff the important relief, and sometimes the only desired relief, of unmasking the defendant.[31] In regard to the plaintiff's burden to satisfy a summary judgment standard, the court explained that a plaintiff was only required to produce evidence on the elements of a defamation claim that were in its control.[32] It explained that because proof of actual malice might be impossible without knowing the defendant's identity, a public-figure plaintiff was not required to present proof of actual malice.[33] According to the court, the second and fourth prongs of the *Dendrite* standard were unnecessary.[34] It explained that a plaintiff, to survive a motion for summary judgment, will quote the alleged defamatory statements in the complaint.[35] It also explained that the summary judgment standard, itself, was the balancing test of a defendant's First Amendment rights and the strength of a plaintiff's defamation claim.[36]

Numerous appellate courts have adopted either the *Dendrite* or *Cahill* standard or some form of one of the two standards.[37]

---

[30] *Id.* at 461.

[31] *Id.* at 457, 461.

[32] *Id.* at 464.

[33] *Id.*

[34] *Id.* at 461.

[35] *Id.*

[36] *Id.*

[37] See *Mobilisa, Inc v Doe 1*, 217 Ariz 103, 111-112; 170 P3d 712 (Ariz App, 2007) (adopting the *Cahill* standard but stating that a balancing

## II. THE NEED FOR ADOPTION OF A STANDARD IN MICHIGAN

The majority concludes that the procedures for a protective order, when combined with the procedures for summary disposition, will be sufficient in nearly every case to adequately protect a defendant's right to speak anonymously. I respectfully disagree.

When presented with a "motion by a party or by the person from whom discovery is sought" a trial court may issue a protective order.[38] However, an anonymous defendant can only request a protective order and ask that the plaintiff be prohibited from unmasking his or her identity or that, as a condition of discovering his or her identity, the plaintiff not disclose his or her identity to third parties, if the defendant knows of the plaintiff's defamation lawsuit and discovery request. There is no guarantee that an anonymous defendant will learn of the plaintiff's lawsuit and its attempt to discover his or her identity in time to request a protective order. Parties may obtain discovery as soon as an action is commenced,[39] and a civil action is commenced when a

test remains necessary); *Krinsky v Doe 6,* 159 Cal App 4th 1154, 1171-1172; 72 Cal Rptr 3d 231 (2008) (stating that it agrees with the courts that have required the plaintiff to make a prima facie showing of the elements of defamation); *Solers, Inc v Doe,* 977 A2d 941, 954-956 (DC App, 2009) (adopting a test that "closely resembles" the *Cahill* standard); *In re Indiana Newspapers Inc,* 963 NE2d 534, 552 (Ind App, 2012) (adopting the *Dendrite* standard but only requiring the plaintiff to produce evidence to support the elements of the claim that are not dependent on the anonymous defendant's identity); *Indep Newspapers, Inc v Brodie,* 407 Md 415, 454-456; 966 A2d 432 (2009) (adopting the *Dendrite* standard); *Mtg Specialists, Inc v Implode-Explode Heavy Indus, Inc,* 160 NH 227, 239; 999 A2d 184 (2010) (adopting the *Dendrite* standard); *Pilchesky v Gatelli,* 2011 PA Super 3; 12 A3d 430, 442-446 (2011) (adopting a "modified version" of the *Dendrite* and *Cahill* standards); *In re Does 1-10,* 242 SW3d 805, 821-823 (Tex App, 2007) (adopting the *Cahill* standard).

[38] MCR 2.302(C).

[39] MCR 2.302(A)(1).

complaint is filed.[40] Although a plaintiff may not take the deposition of a person or send a request for production to a nonparty without leave of the trial court until the defendant "has had a reasonable time to obtain an attorney," the court may grant leave to conduct the discovery without notice having been given to the defendant.[41]

In the present case, Doe 1 did not receive notice from Cooley of the defamation lawsuit or of the subpoena that it obtained directing Weebly to produce his user account information. According to Doe 1, he learned of the defamation lawsuit because Cooley issued a press release after it filed suit. Had Doe 1 not learned of the defamation lawsuit through the media, which caused him to hire an attorney who moved to quash Cooley's subpoena, Cooley could have discovered and publicized Doe 1's identity before Doe 1 even learned that he had been sued for defamation. In my view, the court rules do not preclude such an outcome in a future case.

In my opinion, because the court rules do not guarantee that an anonymous defendant will have an opportunity to protect his or her identity before a plaintiff alleging defamation engages in discovery to learn the defendant's identity, this Court must adopt a standard that will protect a defendant's right to speak anonymously. I acknowledge the majority's concern that it is the province of the Legislature to enact an anti-SLAPP statute[42] and that it is the province of the Michigan Supreme Court to write, or rewrite, the court rules regarding discovery and summary disposition. However, in the absence of action by the Legislature or the

---

[40] MCR 2.101(B).

[41] MCR 2.306(A)(1); MCR 2.307(A)(1); MCR 2.310(D)(1).

[42] SLAPP is an acronym for "strategic lawsuit against public participation." Black's Law Dictionary (7th ed).

Supreme Court, I see nothing wrong with this Court's adopting a standard that is the same as or similar to one that has been adopted by numerous appellate courts across the country to protect the First Amendment right to speak anonymously. Although this right is not absolute,[43] it "would be of little practical value if there was no concomitant right to remain anonymous after the speech is concluded."[44] Failure by this Court to adopt a standard that protects the constitutional right to speak anonymously could intimidate persons into self-censoring their comments or not speaking at all.[45]

### III. A MODIFIED *DENDRITE* STANDARD

I agree with the courts in *Dendrite* and *Cahill* that a standard requiring a plaintiff to present prima facie evidence to create a genuine issue of material fact on the elements of its defamation claim is one that strikes an appropriate balance between a plaintiff's right to sue for defamation and a defendant's right to speak anonymously. To be clear, I do not wish to prohibit any plaintiff from pursuing redress to which he or she is entitled for having been defamed. As noted above, the right to free speech is not absolute; it does not protect defamatory statements. "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right . . . ."[46] However, the interests of both plaintiffs and defendants must be considered, and a defendant should be given an opportunity to protect his or her right to anonymity before it is too late. I would adopt a modified *Dendrite* standard to afford defendants this opportunity.

---

[43] *Chaplinsky*, 315 US at 571.

[44] *In re Does 1-10*, 242 SW3d at 820.

[45] See *Cahill*, 884 A2d at 457.

[46] Const 1963, art 1, § 5.

The first requirement of the *Dendrite* standard, which is also part of the *Cahill* standard, is that the plaintiff must undertake reasonable efforts to notify the anonymous defendant that his or her identity is, or will be, the subject of a discovery request.[47] I would adopt this requirement. "A court should not consider impacting a speaker's First Amendment rights without affording the speaker an opportunity to respond to the discovery request."[48] Thus, at a minimum, the plaintiff should attempt to notify the anonymous defendant through the same medium used by the defendant to post the alleged defamatory statement. For example, if the anonymous defendant posted the statement on a message board, the plaintiff should post a message notifying the defendant of the impending discovery request on the same message board.[49] Then, after making reasonable efforts, the plaintiff must withhold action to allow the defendant an opportunity to oppose the discovery request.[50]

The second requirement of the *Dendrite* standard is that the plaintiff set forth the exact statements by the defendant that it claims were defamatory.[51] I would not adopt this requirement because it is unnecessary. Michigan caselaw requires that alleged defamatory statements be specifically pleaded in the complaint.[52]

---

[47] *Cahill*, 884 A2d at 460-461; *Dendrite*, 342 NJ Super at 141.

[48] *Mobilisa, Inc*, 217 Ariz at 110.

[49] *Id.* at 110-111; *Cahill*, 884 A2d at 461; *Dendrite*, 342 NJ Super at 141.

[50] *Cahill*, 884 A2d at 461; *Dendrite*, 342 NJ Super at 141.

[51] *Dendrite*, 342 NJ Super at 141.

[52] See *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc*, 197 Mich App 48, 53-54; 495 NW2d 392 (1992); *Gonyea v Motor Parts Fed Credit Union*, 192 Mich App 74, 77-78; 480 NW2d 297 (1991).

The third requirement of the *Dendrite* standard, which is also part of the *Cahill* standard, is that the plaintiff must present to the trial court prima facie evidence sufficient to support each element of its cause of action.[53] Michigan is a notice-pleading state.[54] Therefore, a complaint need only "set forth 'allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]' "[55] A court may grant summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted.[56] In deciding such a motion, a court must accept the factual allegations as true and view them in the light most favorable to the nonmoving party.[57] A motion under MCR 2.116(C)(8) may only be granted if no factual development could possibly justify recovery.[58] I acknowledge that claims of defamation must be specifically pleaded, including the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the defamatory words.[59] However, because of the relative ease to plead a claim that survives a motion for summary disposition under MCR 2.116(C)(8), I do not believe that subjecting a plaintiff's defamation complaint to an MCR 2.116(C)(8) standard, in order to determine whether the plaintiff is entitled to discover a defendant's identity, provides sufficient protection to a defendant's First Amendment right to speak anonymously.

---

[53] *Dendrite*, 342 NJ Super at 141; *Cahill*, 884 A2d at 460-461, 463.

[54] *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011).

[55] *Id.*, quoting MCR 2.111(B)(1).

[56] *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010).

[57] *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012).

[58] *Id.*

[59] *Gonyea*, 192 Mich App at 77.

I agree with the courts in *Dendrite* and *Cahill* that requiring the plaintiff to produce prima facie evidence sufficient to support each element of its cause of action more appropriately protects an anonymous defendant's First Amendment rights. "Requiring the [plaintiff] to satisfy this step furthers the goal of compelling identification of anonymous internet speakers only as a means to redress legitimate misuses of speech rather than as a means to retaliate against or chill legitimate uses of speech."[60] Essentially, a plaintiff must produce factual support for its defamation claim to withstand a summary disposition motion under MCR 2.116(C)(10). Summary disposition is proper under MCR 2.116(C)(10) when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.[61] Because the plaintiff must produce the evidence before it learns the defendant's identity, I agree with the court in *Cahill* that the plaintiff should not be required to produce evidence on any element that is dependent on the defendant's identity, such as the defendant's fault in publishing the statement.[62] Requiring the plaintiff to present evidence on the elements of the claim that are not dependent on the defendant's identity, such as the alleged defamatory statement, publication, falsity, and harm (if necessary) will not, in my estimation, be overly burdensome. The elements can generally be established either through production of the alleged defamatory statement or through the plaintiff's affidavit.

The fourth requirement of the *Dendrite* standard is that the court must balance the defendant's First

[60] *Mobilisa, Inc*, 217 Ariz at 111.

[61] *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 599; 792 NW2d 344 (2010).

[62] *Cahill*, 884 A2d at 464; see also *Mobilisa, Inc*, 217 Ariz at 111.

Amendment rights against the strength of the plaintiff's case and the necessity for disclosure of the defendant's identity to allow the plaintiff to proceed.[63] Unlike the court in *Cahill*,[64] I would not dispose of this requirement. In my view, the balancing test serves as a safety mechanism. It permits a trial court to consider and balance all the circumstances and any idiosyncrasies in the case.

I clarify that a plaintiff, by satisfying this modified *Dendrite* standard, would only be entitled to discover the anonymous defendant's identity. After the plaintiff has learned the defendant's identity, the case must proceed along the normal channels of civil procedure, including discovery, case evaluation, summary disposition motions, and, possibly, trial. A plaintiff's satisfaction of the modified *Dendrite* standard does not necessarily mean that the real purpose of the plaintiff's lawsuit was not to unmask the defendant and then engage in extrajudicial self-help remedies. Neither does a plaintiff's satisfaction of the modified *Dendrite* standard establish that the plaintiff will ultimately prevail on its defamation claim. Accordingly, even after a trial court permits a plaintiff to engage in discovery to learn an anonymous defendant's identity, the court retains discretion to enter any protective orders that it deems necessary to protect the defendant's First Amendment rights.[65]

I do not believe that this Court has to create any new proceedings in order for a trial court to apply the modified *Dendrite* standard to a discovery request of a plaintiff alleging defamation who seeks to learn the identity of an anonymous defendant. Michigan follows

---

[63] *Dendrite*, 342 NJ Super at 142.

[64] *Cahill*, 884 A2d at 461.

[65] MCR 2.302(C).

an open, broad discovery policy,[66] and discovery is
available on any matter, not privileged, that is relevant
to the subject matter of the action.[67] There are two
relevant and important limitations on a party's right
to discovery. First, despite the broad scope of discov-
ery, the court rules acknowledge the wisdom of plac-
ing limits on discovery.[68] MCR 2.302(C) provides, in
relevant part:

> On motion by a party or by the person from whom
> discovery is sought, and on reasonable notice and for good
> cause shown, the court in which the action is pending may
> issue any order that justice requires to protect a party or
> person from annoyance, embarrassment, oppression, or
> undue burden or expense, including one or more of the
> following orders:
>
> (1) that the discovery not be had;
>
> (2) that the discovery may be had only on specified
> terms and conditions, including a designation of the time or
> place;
>
> (3) that the discovery may be had only by a method of
> discovery other than that selected by the party seeking
> discovery;
>
> (4) that certain matters not be inquired into, or that the
> scope of the discovery be limited to certain matters;
>
> (5) that discovery be conducted with no one present
> except persons designated by the court[.]

"Good cause simply means a satisfactory, sound or valid
reason[.]"[69] Protective orders may be used to protect

---

[66] *Augustine v Allstate Ins Co*, 292 Mich App 408, 419; 807 NW2d 77
(2011).

[67] MCR 2.302(B)(1).

[68] *Alberto v Toyota Motor Corp*, 289 Mich App 328, 336; 796 NW2d 490
(2010).

[69] *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012) (quotation
marks and citation omitted).

First Amendment rights.[70] Second, as already indicated, although parties may engage in discovery after an action is commenced,[71] and an action is commenced by the filing of a complaint,[72] a plaintiff may need to obtain leave of the court to engage in discovery.[73]

The court rules provide two methods by which a party can obtain discovery from a nonparty: (1) deposition and (2) request for production. A party may depose "a person, including a party," either on oral examination or on written questions,[74] and a deposition may be for the sole purpose of the production of documents or other tangible items for inspection and copying.[75] A party desiring to take the deposition of a person must give written notice to every other party to the action.[76] The notice must name the person to be deposed and, for a deposition on oral examination, the notice must state the time and place for the deposition.[77] A party may request a "nonparty" to produce and permit the party to inspect and test or sample tangible things.[78] A copy of the request must be served on the other parties.[79]

After an action has been commenced, a party generally does not need to obtain leave of the court to depose

---

[70] See *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 38; 654 NW2d 610 (2002), overruled on other grounds *Stand Up For Democracy v Secretary of State*, 492 Mich 588 (2012).

[71] MCR 2.302(A)(1).

[72] MCR 2.101(B).

[73] MCR 2.306(A)(1).

[74] MCR 2.306; MCR 2.307.

[75] MCR 2.305(A)(3).

[76] MCR 2.306(B)(1); MCR 2.307(A)(2).

[77] MCR 2.306(B)(1); MCR 2.307(A)(2).

[78] MCR 2.310(B)(2).

[79] MCR 2.310(D)(2).

a person.[80] However, "[l]eave of court, granted with or without notice, *must* be obtained . . . if the plaintiff seeks to take a deposition before the defendant has had a reasonable time to obtain an attorney."[81] A reasonable time has elapsed if:

(a) the defendant has filed an answer;

(b) the defendant's attorney has filed an appearance;

(c) the defendant has served notice of the taking of a deposition or has taken other action seeking discovery;

(d) the defendant has filed a motion under MCR 2.116; or

(e) 28 days have expired after service of the summons and complaint on a defendant or after service made under MCR 2.106.[82]

The term "must" indicates a mandatory requirement.[83] Similarly, a party may submit a request for production of documents to a nonparty "at any time, except that leave of the court is required if the plaintiff seeks to serve a request before the occurrence of one of the events stated in MCR 2.306(A)(1)."[84]

Presumably, because the plaintiff has sued an anonymous defendant and because the plaintiff wants to learn the defendant's identity, the defendant has not yet been served with process. Accordingly, unless the defendant learned of the plaintiff's lawsuit and took one of the actions listed in MCR 2.306(A)(1)(a) to (d), the plaintiff must obtain leave of the court to engage in discovery with a nonparty to learn the defendant's identity. At this point, presented with a motion for leave

---

[80] MCR 2.306(A)(1); MCR 2.307(A)(1).

[81] MCR 2.306(A)(1) (emphasis added).

[82] *Id.*

[83] *Vyletel-Rivard v Rivard*, 286 Mich App 13, 25; 777 NW2d 722 (2009).

[84] MCR 2.310(D)(1).

to conduct discovery, the trial court can apply the modified *Dendrite* standard. The trial court should grant the plaintiff permission to engage in discovery to learn the defendant's identity only if the plaintiff has made reasonable efforts to notify the defendant and, having withheld action to allow the defendant an opportunity to oppose the discovery request, has submitted evidence sufficient to withstand a motion for summary disposition, on a prima facie basis, under MCR 2.116(C)(10). In addition, the trial court must determine that the strength of the plaintiff's case and the necessity of the discovery of the defendant's identity outweigh the defendant's right to speak anonymously. If MCR 2.306 does not require a plaintiff to obtain leave of the court to take a deposition, either because the defendant was served with process or because the defendant took one of the actions listed in MCR 2.306(A)(1)(a) to (d), the plaintiff can serve the required discovery notice on the defendant and the defendant can move for a protective order, specifically asking that the discovery not be had.[85] At this point, presented with a motion for a protective order, the trial court can apply the modified *Dendrite* standard. Because the defendant already received notice of the requested discovery, the trial court should grant the requested protective order unless the plaintiff has produced sufficient evidence supporting each element of its cause of action on a prima facie basis, and the balancing test weighs in favor of the plaintiff.

### IV. CONCLUSION

I do not believe that Michigan law adequately protects a defendant's First Amendment right to speak anonymously when his or her identity is sought in a

---

[85] MCR 2.302(C)(1).

defamation action. Consequently, I would adopt a modi-
fied *Dendrite* standard to strike the appropriate balance
between an anonymous defendant's First Amendment
rights and a plaintiff's right to learn the defendant's
identity in order to seek redress for alleged defamatory
statements. Under this standard, a plaintiff alleging
defamation may engage in discovery to learn an anony-
mous defendant's identity only after (1) the plaintiff
has made reasonable attempts to notify the defendant
and then has given the defendant a reasonable oppor-
tunity to defend against the discovery request, (2) the
plaintiff has presented the trial court with prima facie
evidence sufficient to support each element of its cause
of action, other than the elements dependent on the
defendant's identity, and (3) the strength of the plain-
tiff's prima facie case and the necessity of disclosure of
the defendant's identity outweigh the defendant's right
to speak anonymously. However, because Cooley has
already learned Doe 1's identity, I concur with the
majority that it is necessary to remand this case to the
trial court for it to determine whether Doe 1 is entitled
to a protective order to prevent further destruction of
his anonymity.