# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES D. AZZAR,

        Plaintiff-Appellant,

v

CITY OF MACKINAC ISLAND and
D AND S NORTH REAL ESTATE, LLC,

        Defendants-Appellees.

UNPUBLISHED
May 23, 2017

No. 331308
Mackinac Circuit Court
LC No. 2013-007434-CH

Before: SAWYER, P.J., and MURRAY and GLEICHER, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's separate orders granting summary disposition to each defendant, the city of Mackinac Island (the "City") and D and S North Real Estate, LLC ("D and S"), in this action for violation of a residential zoning ordinance. We affirm.

## I. FACTS

Defendant D and S owns Lake Huron waterfront property in the City on which it operates a commercial dock, referred to as the Beaver Dock parcel. The property is located in an area zoned R-1, for low density residential use and uses accessory to residential purposes. Plaintiff owns residential property adjacent to the Beaver Dock parcel. Mission Point Resort is located across the highway from the Beaver Dock parcel. Historically, the Beaver Dock has been used to deliver freight for the Mission Point Resort and its predecessor on that property. The dock has also been used to load and unload vehicles and equipment when other loading areas are unavailable. These uses, which predate the enactment of the R-1 zoning classification, are recognized by the City as grandfathered nonconforming uses of the Beaver Dock property. In 1991, the City advised Mission Point Resort in writing of its position that the nonconforming prior usage allowed the property to be used "to [haul] freight and supplies for use at the [Mission Point] resort and occasional loading and offloading of vehicles and equipment," but that any other usage would require application for a zoning variance. The letter did not restrict any of the recognized activities to any particular portion of the Beaver Dock parcel, nor did it restrict the type or quantity of any freight or supplies used by Mission Point, or define any traffic restriction that would be in effect during the periods of "occasional loading and offloading."

In 2012, D and S's predecessor in interest, Lanisplace, entered into a five-year lease with Mission Point Resort, allowing Mission Point Resort to use the Beaver Dock. Plaintiff thereafter

filed this action against Lanisplace and the City to enjoin what he claimed was Lanisplace's improper expansion of the nonconforming use of the parcel, in particular the storage of refuse and construction materials on the property. Plaintiff requested a writ of superintending control against the City, and abatement of the alleged nuisance by Lanisplace. Lanisplace and the City eventually resolved the issues relating to the storage of materials on the property. Plaintiff sought to amend his complaint to add a claim that Lanisplace's use of motor vehicles, in particular a tractor, violated the city's motor vehicle ordinance. Plaintiff's amended complaint again alleged a claim for superintending control against the City, as well as several nuisance claims against Lanisplace, and requested declaratory relief.

While the case was still pending, in 2014, the City encountered a crisis over the availability of commercial dock space due to a dispute involving one of the City's other docks and icing conditions that limited access to the island. As a result, the City entered into a licensing agreement with Mission Point Resort to allow freight companies to temporarily use the Beaver Dock from May 15 to July 15, 2014.[1] The City agreed to pay Mission Point Resort the amount it received from the sublicense freight companies, plus an additional 10 percent for the duration of the licensing period. Subsequently, although plaintiff did not again seek to amend his complaint, he challenged this additional commercial usage of the Beaver Dock as an unlawful expansion of the prior nonconforming use of the property and requested that the trial court enjoin it. Following plaintiff's unsuccessful attempt to obtain a preliminary injunction, the trial court, in separate orders, granted summary disposition in favor of the City and D and S, thereby dismissing plaintiff's claims.

## II. MOOTNESS

We hold that plaintiff's claims against the City are moot. "[A] court should, on its own motion, recognize and reject claims that it does not have the power to decide [including moot ones.]" *People v Richmond*, 486 Mich 29, 35 n 2; 782 NW2d 187 (2010). Whether a case is moot is a question that we review de novo. See *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013). In *Richmond*, 486 Mich at 34-35, our Supreme Court explained:

> It is well established that a court will not decide moot issues. This is because it is the principal duty of this Court . . . to decide actual cases and controversies. That is, [t]he judicial power . . . is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction. As a result, this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before it. Although an issue is moot, however, it is nevertheless justiciable if the issue is one of public significance that is likely to recur, yet evade judicial review. It is universally understood . . . that a moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, . . . or a judgment upon some matter which, when rendered, for any reason, cannot have any practical

---

[1] This licensing agreement was later extended for another 60 days.

legal effect upon a then existing controversy. Accordingly, a case is moot when it presents nothing but abstract questions of law which do not rest upon existing facts or rights.

In general, because reviewing a moot question would be a 'purposeless proceeding,' appellate courts will sua sponte refuse to hear cases that they do not have the power to decide, including cases that are moot. Whether a case is moot is a threshold issue that a court addresses before it reaches the substantive issues of the case itself. [Citations, quotation marks, and footnote omitted; alteration in original.]

See also *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

Plaintiff argues that the City unlawfully expanded the prior nonconforming usage of the Beaver Dock parcel when it entered into the licensing agreement that allowed the Beaver Dock to be temporarily used for public commercial freight. However, the licensing agreement expired on September 15, 2014. The City did not seek to renew the agreement to operate the Beaver Dock as a public commercial freight dock in 2015 or 2016, and so Beaver Dock is not currently being used as a public commercial freight dock. Consequently, there is no meaningful relief this Court can provide because the licensing agreement that allegedly expanded the nonconforming use of the dock has expired by its terms, without being renewed. Any decision by this Court holding that the City was not permitted to enter into the licensing agreement would constitute "a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." *Richmond*, 486 Mich at 34-35 (citations and quotation marks omitted).[2]

Further, plaintiff has not demonstrated that the matter is justiciable because it is "likely to recur, yet evade judicial review." *Id*. at 34 (citation and quotation marks omitted). Plaintiff has not provided any indication that the City intends or is contemplating to enter into a future licensing agreement to use the Beaver Dock as a commercial dock. The circumstances that led to the creation of the licensing agreement no longer exist. While it is possible that the circumstances creating a need for commercial dock space may arise again in the future, plaintiff has not demonstrated that it is "likely" to recur. Accordingly, we agree with the City that plaintiff's claims against it are moot.[3]

## III. SUBSTANTIVE CLAIMS

---

[2] As we noted earlier, the original complaint about the debris scattered by the dock area was quickly resolved by the City and Lanisplace. To the extent that plaintiff's nuisance claims are premised upon this debris, those claims are likewise moot.

[3] As to the allegation in the amended complaint regarding the use of a motor vehicle without a permit, plaintiff does not argue this issue on appeal and it is not addressed in his request for relief. We will therefore not address that issue. However, at oral argument before this Court, it appeared that the issue also may be moot because the current owner does have a permit.

With respect to plaintiff's nuisance claims against D and S for its alleged improper expansion of the nonconforming use of the Beaver Dock parcel, plaintiff properly observes that "one of the goals of local zoning is the gradual elimination of nonconforming uses." *Century Cellunet of Southern Mich Cellular, Ltd Partnership v Summit Twp*, 250 Mich App 543, 546; 655 NW2d 245 (2002). However, "[a] prior nonconforming use is a vested right to continue the lawful use of real estate in the manner it was used prior to the adoption of a zoning ordinance" and "[a] zoning ordinance cannot operate to oust the property owner of his vested right even though the ordinance is reasonable." *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 573-574; 398 NW2d 393 (1986) (quotation marks omitted); see also *Heath Twp v Sall*, 442 Mich 434, 439; 502 NW2d 627 (1993) ("A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date."). However, the expansion of a prior nonconforming use is generally not permitted. *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 342; 810 NW2d 621 (2011). "The continuation of a nonconforming use must be substantially of the same size and the same essential nature as the use existing at the time of passage of a valid zoning ordinance." *Id.*, citing *Norton Shores v Carr*, 81 Mich App 715, 720; 265 NW2d 802 (1978). It is also restricted to the area that was nonconforming at the time of the ordinance. *Id.*; see also *Patchak v Lansing Twp*, 361 Mich 489, 497-499; 105 NW2d 406 (1960).

Despite the numerous permutations of his arguments and claims below, plaintiff now argues that the use of a "loop road," and apparently particularly the west portion of it, constitutes an impermissible expansion of the prior nonconforming use. This theory was not set forth in plaintiff's amended complaint, so it is not a proper part of this lawsuit. MCR 2.111(A) and (B); *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). In any event, to the extent that the nonconforming use is limited to the area that was nonconforming at the time the ordinance was enacted, the entire parcel is nonconforming, because it is being used for a commercial, rather than residential, purpose. Further, it is the operation of a commercial dock on residentially zoned property that constitutes the nonconforming use, not the access road or roads from the dock to the street. Plaintiff has pointed to nothing in the township's zoning ordinance that would prevent access from the street to the lake or dock using any part of either lot 41 or lot 42 if the dock was used for a residential rather than commercial purpose. The dock has not expanded or moved. In addition, the 1991 letter from the City to Mission Point Resort contains no recognition of a limitation of use to any particular part of the Beaver Dock parcel.

Moreover, the record does not support plaintiff's latest claim that the prior nonconforming use involved only lot 42, such that lot 41 cannot be used in the future. The evidence establishes that more than one portion of the Beaver Dock parcel, including the entirety of the "loop road," had historically been used to transfer goods from the dock to the road. We note that the photographic and survey evidence indicates that a portion of this road lies within lot 41 as it passes a shed on the east side of a reverse L-shaped building. More significantly, however, it is clear that at least part of lot 41 was, until plaintiff's earlier lawsuit, used for transportation purposes. In order to move freight along the "Beaver Dock Road" adjacent to the lake in front of plaintiff's property, Lanisplace would have had to use part of lot 41. This undercuts plaintiff's argument that the trial court was required to find that the prior nonconforming use involved only a portion of the Beaver Dock parcel. At one point, many parts of both lot 41 and lot 42 were used. Accordingly, the trial court did not err in ruling that plaintiff

failed to establish a question of fact concerning an improper expansion of the nonconforming use.

Affirmed.  Having prevailed in full, defendants may tax costs.  MCR 7.219(A).


/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Elizabeth L. Gleicher