*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re SVETLANA TCHAKAROVA.

MEGHAN INGHAM,

Petitioner-Appellee,

v

SVETLANA TCHAKAROVA, also known as
LANA CHUCK,

Respondent-Appellant.

FOR PUBLICATION
May 14, 2019
9:10 a.m.

No. 345739
Washtenaw Circuit Court
LC No. 18-000658-MI

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

M. J. KELLY, J.

Respondent, Svetlana Tchakarova, appeals by right the probate court order granting the petition for involuntary mental-health treatment and ordering respondent to undergo mental-health treatment for up to 90 days, with up to 60 days of hospitalization. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On September 6, 2018, petitioner filed a petition for mental-health treatment. The petition alleged that, as a result of mental illness, (1) respondent "can be reasonably expected within the near future to intentionally or unintentionally seriously physically injure [herself] or others, and has engaged in an act or made significant threats that are substantially supportive of this expectation," (2) respondent "is unable to attend to those basic physical needs that must be attended to in order to avoid serious harm in the near future, and has demonstrated that inability by failing to attend to those basic physical needs," and (3) respondent's "judgment is so impaired by that mental illness that [she] is unable to understand [her] need for treatment, and whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical or mental harm to [herself] or presents a substantial risk of physical harm to others in the near future." In support of the allegations, petitioner attached clinical certificates

from a physician and a psychiatrist who observed respondent at the hospital. Both doctors diagnosed respondent with bipolar disorder, determined that she displayed a likelihood of injuring herself and that she did not understand the need for treatment, and recommended a course of treatment that consisted of 60 days of hospitalization and 90 days of outpatient care with permission to use injectable medication and communicate with respondent's family and other treatment providers.

The probate court ordered Washtenaw County Community Mental Health (CMH) to assess alternatives to hospitalization. Following its evaluation, CMH recommended respondent be hospitalized for up to 60 days, followed by "alternative treatment."

A hearing on the petition was held on September 12, 2018. Dr. Scott Mariouw, a psychiatrist, testified that he and a psychiatric resident met with respondent on September 6, 2018, the day after she was admitted to the hospital. Dr. Mariouw met with her every day since then for follow-up. Dr. Mariouw diagnosed respondent with schizoaffective disorder, bipolar type, which was a disorder of both thought and mood. He explained that respondent exhibited disorganized thoughts, behaviors, and delusions that impaired her ability to function in society. Respondent's husband had provided Dr. Mariouw with documentation of respondent's original diagnosis of bipolar disorder in 1991 and photographs of numerous car crashes respondent was involved in because of her illness. Respondent had suffered a traumatic brain injury (TBI) in a car accident in 1993, and the TBI likely made respondent's prior symptoms worse and more difficult to treat.

Dr. Mariouw noted that respondent had been ticketed for reckless driving and speeding on September 1, 2018, and arrested on September 4, 2018, for trespassing as a result of her delusions related to stalking professors on college campuses, which showed impairment of judgment. Dr. Mariouw believed that respondent could intentionally or unintentionally seriously injure herself or someone else in the near future because the reckless driving and the stalking showed that she provoked someone else or could hurt someone else. Dr. Mariouw opined that respondent's judgment was so impaired that she did not understand that she needed treatment because she did not believe she had a mental illness. He also stated that respondent has left the county or the country in the past to avoid court-ordered treatment. Dr. Mariouw did not believe that respondent had made progress since she was hospitalized on September 5, 2018. And he confirmed that respondent was not taking medication at the time of the hearing.

Respondent also testified, stating that she had a mental illness "[a]s much as somebody can prove it." She did not believe she needed to be in the hospital, explaining that "for twenty-eight years, I have been detailed [sic] in mental hospital." She elaborated that the doctors rob her husband, "don't give my injection," and allowed her husband to "pay my expenses to escape the country." Respondent explained that "[d]octors prove doctors wrong and judges wrong and don't give me a shot and allow me to escape the country." She suggested that "[t]he system is not so good," and the doctors were obligated by the system to "claim [she was] insane." Then, as her lawyer was summarizing his closing argument, respondent added that her medications do not stop her violence, and she indicated that her medications, in fact, caused her to be violent and want to throw things, and she stated, in vague terms, that she "hit the government official, which is [a] felony," but was excused because of her "mental sickness."

Following the hearing, the trial court found by clear and convincing evidence that respondent was a "person requiring treatment" under MCL 330.1401(1)(a) and (c).

## II. MOOTNESS

### A. STANDARD OF REVIEW

Petitioner argues that, if this appeal is not decided on or before February 12, 2019, respondent's appeal of the September 12, 2018 involuntary commitment order would be moot and the case should be dismissed without reaching its merits. Whether an issue is moot is a question of law that this Court reviews de novo. *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013).

### B. ANALYSIS

The question of mootness is a threshold issue that a court must address before it reaches the substantive issues of a case. *In re MCI Telecom Complaint*, 460 Mich 396, 434-435 n 13; 596 NW2d 164 (1999). This is because Michigan courts exist to decide actual cases and controversies. *Cooley*, 300 Mich App at 254. "A matter is moot if this Court's ruling 'cannot for any reason have a practical legal effect on the existing controversy.' " *Id*., quoting *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010).

In this case, petitioner cursorily suggests that the matter is moot because the probate court order expired before the resolution of respondent's appeal.[1] Petitioner appears to contend that, because the order has expired, even if this Court were to determine that the order was improperly entered, our decision would not have any practical legal effect on the existing controversy. At first glance this argument seems logical because if respondent has already received 90 days of mental-health treatment, including hospitalization for up to 60 days, nothing this Court says will alter that fact. Nevertheless, there are collateral legal consequences flowing from that order. For instance, because of her involuntary commitment, respondent is ineligible to possess a firearm. The Gun Control Act prohibits numerous categories of people from gun ownership. 18 USC 922(g). Relevant to this appeal, § 922(g)(4) prohibits anyone "who has been adjudicated as a mental defective or who has been committed to a mental institution" from possessing a firearm. Federal regulations make clear that "committed to a mental institution" only applies to persons who are *involuntarily* committed by an appropriate judicial authority following due process safeguards. See 27 CFR 478.11 (defining the phrase "committed to a mental institution"). And the phrase "adjudicated as a mental defective," requires a determination by a court that a person, as a result of mental illness (1) is a danger to herself or (2) "[l]acks the mental capacity to contract or manage [her] own affairs." 27 CFR 478.11. Accordingly, even though the order in this case has expired, collateral legal consequences remain in the form of restrictions on the right

---

[1] In support of its argument, petitioner directs this Court to the recent decision in *In re Horvath*, unpublished per curiam opinion of the Court of Appeals, issued January 8, 2019 (Docket No. 344243). Unpublished opinions of this Court, however, are not binding precedent. MCR 7.215(C)(1).

to possess a firearm, so the issue is not moot. See *Mead v Batchlor*, 435 Mich 480, 486; 460 NW2d 493 (1990), abrogated on other grounds *Turner v Rogers*, ___ US ___; 131 S Ct 2507; 180 L Ed 2d 452 (2011) (noting that an issue is not moot if it "may have collateral legal consequences" for an individual). See also *TM v MZ*, 501 Mich 319-320; 916 NW2d 473 (2018) (holding that the mere expiration of a personal protection order did not render a challenge to the order moot when there remained a lingering legal consequence stemming from the entry of the PPO).

Moreover, even if a claim is moot, as a practical matter, this Court may consider a legal issue if it "is one of public significance that is likely to reoccur, yet evade judicial review." *Cooley*, 300 Mich App at 254 (quotation marks and citation omitted). Here, the nature of the probate order all but guarantees that no meaningful judicial review of the order can ever be conducted before the order expires. An issue is likely to evade judicial review if the time frames of the case make it unlikely that appellate review can be obtained before the case reaches a final resolution. See *Socialist Worker's Party v Secretary of State*, 412 Mich 571, 582 n 11; 317 NW2d 1 (1982); I*n re Midland Publishing Company, Inc*, 420 Mich 148, 152 n 2; 362 NW2d 580 (1984). The order was for a maximum treatment period of 90 days, with up to 60 days in the hospital. Given this short time frame, the issue is likely to reoccur, yet evade judicial review.[2] Moreover, during the 90-day period that the order was in effect, respondent was ordered to "take medications as prescribed." Here, injections were being recommended. Further, the court order provided that the hospital "may speak/consult with [respondent's] husband or other treatment providers." Thus, respondent's medical information was subject to being shared with individuals without her express consent. Finally, given that hospitalization was authorized for up to 60 days, there was also a significant limit on her freedom of movement. Under these circumstances, we conclude that the issue is one of public significance. It is axiomatic that an individual subjected to involuntary mental-health treatment will be significantly impacted by the order in that

---

[2] Under the court rules, respondent was entitled to an appeal by right from a final order affecting her rights under the Mental Health Code. See MCR 5.801(A)(4). Under MCR 7.204(A)(1), an appellant has 21 days following the entry of the adverse order to file a claim of appeal. Thereafter, the appellant has 28 days to file a brief in support of the claim of appeal, but the court rules provide that more time may be provided under certain circumstances. MCR 7.212(A)(1)(a)(*i*). The court rules further provide that after being served with an appellant's brief, the appellee has 21 days to file a responsive brief, although, again, that time may be extended. MCR 7.212(2)(a)(*i*). Finally, the appellant may file a reply brief within 21 days of being served by the appellee brief. MCR 7.212(G).

The case is not necessarily heard immediately after the briefs have been filed. Instead, MCR 7.213(B) provides that after the briefs have been filed or the time for doing so has expired, the clerk of the court must "notify the parties that the case will be submitted as a 'calendar case' at the next available session of the court." MCR 7.213(B). And, although priority is given to cases involving mental health treatment under the Mental Health Code, MCR 7.213(C)(2), given the time already set aside for filing the claim of appeal, the appellant's brief, the appellee's brief, and the reply brief, it is plain that resolution of the matter before expiration of a 90-day order is unlikely.

treatment decisions will be made for them and in that, if inpatient treatment is ordered, their freedom of movement will be limited. We conclude that the public has a significant interest in ensuring that such orders curtailing a person's liberty are properly entered. Accordingly, even if there are no lingering legal consequences stemming from the probate court order, application of the mootness doctrine is not appropriate in this case.

The issue is not moot.

## III. PERSON REQUIRING TREATMENT

### A. STANDARD OF REVIEW

Respondent argues that petitioner did not introduce clear and convincing evidence that she was a person requiring treatment as defined in MCL 330.1401(1)(a) and (c). This Court reviews a matter of statutory interpretation de novo. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). In addition, this Court

> reviews for an abuse of discretion a probate court's dispositional rulings and reviews for clear error the factual findings underlying a probate court's decision. A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding. [*Id*. at 328-329 (quotation marks and citations omitted).]

### B. ANALYSIS

MCL 330.1401(1) provides in relevant part that the phrase "person requiring treatment" means:

> (a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.
>
> \* \* \*
>
> (c) An individual who has mental illness, whose judgment is so impaired by that mental illness that he or she is unable to understand his or her need for treatment, and whose impaired judgment, on the basis of competent clinical opinion, presents a substantial risk of significant physical or mental harm to the individual in the near future or presents a substantial risk of physical harm to others in the near future.

" 'Mental illness' means a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). "A judge or jury shall not find that an individual is a

person requiring treatment unless that fact has been established by clear and convincing evidence." MCL 330.1465. Respondent does not contest Dr. Mariouw's testimony that she has a mental illness. She only argues that his testimony did not establish by clear and convincing evidence a reasonable expectation or substantial risk of harm to respondent or others.

Respondent asserts that she was not a person requiring treatment as defined in MCL 330.1401(1)(a) because a reckless driving ticket and a speeding ticket were not clear and convincing evidence that she could be expected to physically harm herself or someone else, intentionally or unintentionally. Reckless driving is defined as driving "in willful or wanton disregard for the safety of persons or property" or driving that "causes serious impairment of a body function" or death. MCL 257.626(2), (3), and (4). Moreover, MCL 330.1401(1)(a) does not require the potential harm to be intentional. Respondent's tickets for reckless driving and speeding were evidence of a reasonable expectation of physical harm to respondent or someone else because they were not isolated incidents. Rather, they were part of an ongoing pattern of behavior dating back to 1993 when respondent suffered a TBI in a car accident. Respondent has been in multiple car accidents, which inherently carry a risk of harm to those individuals involved in the accident, including respondent. Respondent's recent tickets for reckless driving and speeding, combined with her history of car accidents, one of which resulted in harm to respondent, demonstrated a reasonable expectation of intentional or unintentional serious physical injury to respondent or another individual in the near future. In addition, Dr. Mariouw's testimony made it plain that respondent's recent reckless driving and speeding ticket were linked to her ongoing mental-health issues.

Respondent next contends that Dr. Mariouw's testimony was inadequate because it was not clear whether he used the word "stalking" in the technical sense or the colloquial sense, and she asserts that stalking includes behavior that does not involve a risk of physical harm. Whatever definition of stalking Dr. Mariouw intended, either definition contemplates actions directed against another person that could unintentionally result in physical harm. The Michigan Penal Code, MCL 750.1 *et seq.*, defines "stalking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed or molested." MCL 750.411i(1)(e). And, colloquially, the most pertinent common definition of "to stalk" is "to pursue obsessively and to the point of harassment." *Merriam-Webster's Collegiate Dictionary* (11th ed). In addition, criminal trespass occurs when a person enters or remains on or in another's land or premises when that person has been forbidden to enter, has been asked to leave, or has not received the owner's consent to enter or remain. MCL 750.552(1)(a), (b), and (c). Both stalking and trespass involve harassing or unwanted contact directed at another person. Again, MCL 330.1401(1)(a) contemplates the possibility of *unintentional* harm. Although Dr. Mariouw did not elaborate on the circumstances of the arrest for trespassing, that arrest, combined with respondent's delusions related to stalking professors on college campuses, was also consistent with a reasonable expectation of intentional or unintentional serious physical injury to respondent or another individual in the near future.

Respondent argues that there was no testimony that she engaged in acts or made threats to substantially support an expectation of harm. Reckless driving, speeding, and trespassing are "acts" as required by subsection (a). Because those acts, in light of respondent's history,

substantially support the expectation of intentional or unintentional serious physical injury to respondent or to another within the near future, they meet subsection (a)'s definition of a person requiring treatment.

Next, respondent argues that she was not a person requiring treatment as defined in MCL 330.1401(1)(c) because although Dr. Mariouw testified that respondent's judgment was so impaired that she was unable to understand the need for treatment, there was no evidence that respondent's impaired judgment presented a substantial risk of harm to herself or others. Dr. Mariouw testified that respondent's delusions related to stalking professors on college campuses led to her arrest for trespassing, and those delusions impaired her judgment. Dr. Mariouw also testified that respondent had previously been ordered to receive treatment for her mental illness and had left the county or the country to avoid treatment. Accordingly, Dr. Mariouw testified that respondent's judgment was impaired both in relation to respondent's inability to acknowledge the need for treatment and the risk of physical harm to others. For this reason, Dr. Mariouw's testimony established both elements of subsection (c). In sum, the trial court did not err by finding that respondent was a person requiring treatment and by ordering that respondent receive treatment for her mental illness.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Jonathan Tukel