*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALIAMA X. SCHAUMANN-BELTRAN,

       Plaintiff-Appellee,

v

JOSEPH GEMMETE, M.D.,

       Defendant-Appellant.

FOR PUBLICATION
December 10, 2020
9:10 a.m.

No. 347683
Washtenaw Circuit Court
LC No. 17-000132-NH

---

ALIAMA X. SCHAUMANN-BELTRAN,

       Plaintiff-Appellee,

v

UNIVERSITY OF MICHIGAN REGENTS, doing business as UNIVERSITY OF MICHIGAN HEALTH SYSTEM, also known as MICHIGAN MEDICINE, UNIVERSITY OF MICHIGAN MEDICAL CENTER, and C.S. MOTT CHILDREN'S HOSPITAL,

       Defendants-Appellants.

No. 347684
Court of Claims
LC No. 17-000038-MH

---

Before: MARKEY, P.J., and METER and GADOLA, JJ.

GADOLA, J.

In this interlocutory appeal, defendants appeal by leave granted the order of the trial court under MCR 2.311(A), requiring plaintiff to participate in a neuropsychological examination to be conducted by defendants' neuropsychology expert, but permitting plaintiff's counsel to video record the examination. We reverse and remand to the trial court for proceedings consistent with this opinion.

-1-

## I. FACTS

Defendant Joseph Gemmete, M.D., practices within the University of Michigan Health System, now referred to as Michigan Medicine. In 2014, Dr. Gemmete diagnosed plaintiff Aliama X. Schaumann-Beltran, who was then a minor, as suffering from a vascular malformation in her left forearm, wrist, and hand known as venous malformation, which is an abnormal collection of veins. Dr. Gemmete recommended a procedure known as sclerotherapy, and Aliama's parents agreed to the procedure.

Dr. Gemmete performed the sclerotherapy, and allegedly injected bleomycin, a chemotherapy drug not approved by the FDA for use in sclerotherapy, into Aliama's vascular malformation. He also allegedly injected sodium tetradecyl sulfate into the vascular formation. Over the course of the following month, Aliama's left index and middle fingers contracted and turned various shades of blue, white, and purple, and she experienced a decrease in sensation in her left hand. Additional surgeries were performed, and ultimately, doctors amputated Aliama's left index and middle fingers, which had become black.

Following the initial surgery, Dr. Gemmete allegedly accused Aliama of drug abuse, accused Aliama's parents of medical neglect, and allegedly directed someone at defendant C.S. Mott Children's Hospital to file a medical neglect complaint against Aliama's parents with Child Protective Services. In addition, during a meeting with Aliama's family, Dr. Gemmete allegedly shouted at Aliama's sister while jabbing his finger close to her face.

Plaintiff initiated a medical malpractice action against Dr. Gemmete[1] in the Washtenaw Circuit Court. Plaintiff also initiated a medical malpractice action in the Court of Claims against defendants, The Board of Regents of the University of Michigan, d/b/a University of Michigan Health System (now Michigan Medicine), the University of Michigan Medical Center, and C.S. Mott Children's Hospital, seeking recovery under a theory of vicarious liability. Plaintiff, her parents, and her sister also initiated an action against Dr. Gemmete in the Washtenaw Circuit Court alleging defamation and assault. Upon stipulation of the parties, the Court of Claims transferred the case before that court to the Washtenaw Circuit Court where it was consolidated with the two cases before the circuit court.

Before the trial court, the parties agreed that Aliama would submit to a neuropsychological evaluation to be performed by defendants' neuropsychological expert, Jennifer Huffman, Ph.D. Defendants, however, did not agree to plaintiff's requests that her attorney be present during the evaluation and that the evaluation be video recorded. Defendants filed a motion to compel a physical and mental examination under MCR 2.311, and also sought a protective order under MCR 2.302(C). Defendants argued that third-party observers and video recording of the testing would be intrusive, would affect the performance of the evaluation, would undermine the validity of the findings made on the basis of the adversely affected test results, and would violate the ethical standards of practice for psychologists in Michigan. Defendants supported the motion with the affidavit of Dr. Huffman, attesting that she would withdraw from the evaluation rather than violate

---

[1] Plaintiff was a minor at the time the lawsuits were initiated; the lawsuits were initiated on her behalf by her next friend, Jose Luis Beltran.

her ethical duties by testing plaintiff while a third-party was allowed to observe the testing, either directly or indirectly. Defendants also supported their motion with medical literature defending their position that third parties should not observe psychological testing.

The trial court granted defendants' motion in part and ordered plaintiff to participate in the neuropsychological evaluation by defendants' expert under MCR 2.311(A). The trial court, however, also ordered that plaintiff would be allowed to video record the evaluation in lieu of having her attorney present. The trial court explained that it was unconvinced that the presence of a camera would give rise to any ethical concern or affect the validity of the testing.

Defendants sought interlocutory leave to appeal the order of the trial court in the three cases. This Court granted the applications, and consolidated the cases on appeal.[2] Thereafter, the parties settled the defamation lawsuit, and this Court dismissed that appeal.[3] We also accepted for filing in the consolidated cases an amici curiae brief submitted by various professional psychological and clinical neuropsychology organizations[4] supporting the position that third parties should not be permitted to observe a neuropsychological examination, nor should such examinations be video recorded.

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision on a motion to compel a medical examination under MCR 2.311(A). *Burris v KAM Transp, Inc*, 301 Mich App 482, 487; 836 NW2d 727 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). A trial court also necessarily abuses its discretion when it makes an error of law. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). This

---

[2] *Aliama X Schaumann-Beltran v Joseph Gemmete MD*, unpublished order of the Court of Appeals, entered July 16, 2019 (Docket No. 347682); *Aliama X Schaumann-Beltran v Joseph Gemmete MD*, unpublished order of the Court of Appeals, entered July 16, 2019 (Docket No. 347683); *Aliama X Schaumann-Beltran v University of Michigan Regents*, unpublished order of the Court of Appeals, entered July 16, 2019 (Docket No. 347684).

[3] *Aliama X Schaumann-Beltran v Joseph Gemmete, M.D.*, unpublished order of the Court of Appeals, entered October 31, 2019 (Docket No. 347682).

[4] Amici curiae in this case are The American Academy of Clinical Neuropsychology, The National Academy of Neuropsychology, The Society for Clinical Neuropsychology of the American Psychological Association, The American Board of Professional Neuropsychology, and The Michigan Psychological Association. The amici curiae describe at length scientific literature and position statements of governing professional bodies on the subject of the potential detrimental impact of third-party observance and recording on test reliability and test security, and the ethical implications for the practitioner.

Court reviews de novo the proper application and interpretation of court rules. *Henry v Dow Chemical Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

## B. VIDEO RECORDING OF THE EXAMINATION

Defendants contend that the trial court abused its discretion by ordering that plaintiff be permitted to video record the neuropsychological examination in this case. We agree.

Michigan courts have long had discretion to direct a party to submit to a medical examination when the party's injuries are at issue. See, e.g., *Logan v Agricultural Society of Lenawee Co*, 156 Mich 537, 542; 121 NW 485 (1909) (holding that the trial court was within its discretion when it denied the defendant's motion to compel the plaintiff to participate in a medical examination), and *Graves v City of Battle Creek*, 95 Mich 266, 268; 54 NW 757 (1893) (holding that the trial court had discretion to grant or deny a motion to compel a medical examination of a party). A trial court's discretion to order a party to participate in a medical examination is now set forth in MCR 2.311(A), which has as its basis former Michigan court rule GRC 1963, 311.1, which in turn was modeled on Fed R Civ P 35. See *Burris*, 301 Mich App at 495 (M.J. KELLY, P.J., dissenting).

Under MCR 2.311(A), a trial court has discretion to order a party to submit to a physical or mental examination (1) upon motion of a party when (2) the mental or physical condition of a party is in controversy, and (3) good cause is demonstrated. That court rule also specifically provides that the trial court may order that the attorney for the person undergoing the examination may be present during the examination. Specifically, MCR 2.311(A) provides:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician (or other appropriate professional) or to produce for examination the person in the party's custody or legal control. The order may be entered **only on motion for good cause** with notice to the person to be examined and to all parties. The order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and **may provide that the attorney for the person to be examined may be present at the examination**. [Emphasis added.]

Court rules are construed using the principles of statutory interpretation. *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 324; 900 NW2d 680 (2017). "The intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole." *Haliw v Sterling Heights*, 471 Mich 700, 706; 691 NW2d 753 (2005). If the language of the court rule is clear and unambiguous, it is enforced as written. *Acorn Investment Co v Mich Basic Prop Ins Ass'n*, 495 Mich 338, 350; 852 NW2d 22 (2014).

Although MCR 2.311(A) provides that the trial court may order that the attorney for the person to be examined may be present at the examination, the court rule does not provide that an examination of a party may be video recorded. In this case, the trial court reasoned that video recording was less obtrusive than the presence of plaintiff's counsel at the examination. The trial

court thereby concluded that its discretionary authority under MCR 2.311(A) to permit plaintiff's attorney to attend the examination extended to include, or perhaps was synonymous with, permitting the examination to be video recorded in lieu of plaintiff's counsel attending the examination.

We observe first that there is little authority shedding light on this question. As noted, MCR 2.311(A) has as its basis former Michigan court rule GRC 1963, 311.1. That predecessor court rule provided, in pertinent part:

> In an action in which the mental or physical condition or the blood relationship of a party, or of an agent or a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental or blood examination by a physician or to produce for such examination his agent or the person in his custody or legal control. The order may be made only for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination, the person or persons by whom it is to be made, and **shall provide that the attorney for the person to be examined may be present at the examination**. [GCR 1963, 311.1 (emphasis added).]

This Court discussed the former court rule in *Nemes v Smith*, 37 Mich App 124; 194 NW2d 440 (1971). In *Nemes*, the plaintiff brought an action based on injuries allegedly arising from an automobile accident. The trial court ordered the plaintiff, under GRC 1963, 311.1, to participate in a physical examination by the defendant's expert, and the trial court denied the plaintiff's request either to tape record or record by court reporter the questions asked and the answers given during the examination. *Nemes*, 37 Mich App at 125, 131. On appeal, this Court affirmed the trial court's order. Observing that the court rule permitted the attorney of the person being examined to be present during the examination but did not provide for recording the examination, this Court held:

> We are constrained to determine that the court rule is all inclusive and provides the safeguards necessary to protect the interests of a person to be examined by a doctor for the opposing side.
>
> The plaintiff asserts that in construing the court rule we should consider that the plaintiff has the right to make a record of the questions asked and the answers given at the physical examination by the use of either a mechanical tape recorder, or in lieu thereof, a court reporter. We decline to write in the court rule by interpretation that which is absent in its language. [*Id*. at 131.]

As noted, this Court in *Nemes* was not discussing MCR 2.311(A), but instead was discussing the similar provision in the precursor to the current court rule. We also observe that under MCR 7.215(J)(1), this Court is not required to follow as precedential opinions from this Court issued before November 1, 1990. Nonetheless, under traditional principles of stare decisis published opinions of this Court issued before that date have precedential effect, MCR 7.215(C)(2); *New Covert Generating Co, LLC v Twp of Covert*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 348720, 348721); slip op at 8 n 3, and therefore are entitled to

deference. See *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018). We therefore consider with deference this Court's decision in *Nemes* that the similar language of the predecessor court rule to MCR 2.311(A), which permitted the presence during an examination of the attorney of the person being examined, did not thereby authorize the person being examined to record the examination.

Although not discussing MCR 2.311(A), our Supreme Court employed reasoning similar to that of *Nemes* and arrived at a similar conclusion in construing § 385 of the Workers' Disability Compensation Act, MCL 418.385, in *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 368; 459 NW2d 279 (1990) (Opinion by RILEY, C.J.). There, the plaintiff was allegedly injured in a work-related accident and sought workers' compensation benefits. The defendant employer requested under § 385 of that act that the plaintiff participate in an examination by the defendant's medical expert. The plaintiff refused to participate unless her attorney was present during the examination. The magistrate determined that § 385 permitted the plaintiff to have her physician present during the examination, but did not bestow upon the plaintiff the right to have her attorney present. The magistrate thereafter dismissed the plaintiff's petition, and the Workers' Compensation Appeal Board affirmed the magistrate's decision.

This Court reversed the decision of the WCAB, holding that the plaintiff had the right to have her attorney present during the examination and to make an audio recording of the examination. *Id*. at 357. Our Supreme Court reversed the decision of this Court, and held that although MCL 418.385 permitted a plaintiff to have his or her own physician present during the examination, that statute did not entitle the plaintiff to have her attorney present, nor was she entitled to make an audio recording of the examination. The Court rejected the plaintiff's argument that because MCL 418.385 does not specifically preclude the presence of an attorney it should be construed as permitting counsel to be present during the examination. The Court reasoned:

> Section 385 grants an employer or its carrier the authority to have a physician of its choice conduct a medical examination of an employee. The statute is clear and unambiguous in that it permits the employee "the right to have a physician provided and paid for by himself or herself present at the examination." It is equally clear that § 385 does *not* provide the employee with the right to have counsel present at the examination. The right of the employee is plainly granted within the statute and exists *only* to the extent plainly granted. Therefore, the mode prescribed within § 385 "must be followed and none other . . . ."

> The plaintiff advances the argument that an employee has the right to have counsel present during a § 385 medical examination because the statute does not expressly preclude attorneys. This rationale ignores the obvious fact that the Legislature has *expressly prescribed* that an employee has the right to have a personal physician present. To extend the right of an employee to include the presence of an attorney merely because the statute does not *expressly prohibit* counsel would neutralize the effect of the entire § 385 sentence in question and render it nothing more than surplusage. This is a conclusion that may only be reached when we are presented with a strong countervailing legislative implication, and that is not the case here.

* * *

Section 385 provides a procedure which allows an employer or its carrier to conduct a physical examination of an injured employee. The statute is clear in that it provides an employee with the right to have a personal physician present at the examination. To extend the effect of § 385 beyond the language of the statute would breach the rules of statutory construction, as well as the summary spirit of the WDCA.

\* \* \*

We hold that an employee does not have the right to have counsel present during a physical examination requested by an employer or its carrier pursuant to § 385. Consequently, we find as moot the second issue regarding the audio recording of the examination. [*Feld*, 435 Mich 364-368 (quotation marks, citations, and footnotes omitted).]

In this case, plaintiff contends, and the trial court held, that because MCR 2.311(A) authorizes the trial court to permit plaintiff's counsel to be present during the neuropsychological examination, the trial court also had discretion to authorize the video recording of the examination. Plaintiff contends, and the trial court agreed, that video recording the examination is less obtrusive than the presence of plaintiff's attorney at the examination. Plaintiff also argues that the court rule directs that the trial court specify the conditions of an examination, suggesting that the trial court could impose video recording as a "condition" of the examination. However, the former court rule also permitted the trial court to specify the conditions of the examination, but this Court in *Nemes* did not construe that provision as authority to permit the recording of the examination. As in *Nemes*, and in the spirit of *Feld*, we decline to write into the court rule authorization for the trial court to permit video recording of the examination when that authorization is not present in the language of the court rule. We therefore conclude that the trial court abused its discretion by ordering that plaintiff, or more specifically her counsel, be permitted to video record the examination.

On appeal, defendants and amici point out various detrimental effects of video recording an examination, namely, that video recording may taint the evaluation results, render impossible the comparison of data, endanger the security of the test, and run afoul of ethical concerns for the practitioners administering the tests. Defendants and amici also outline the similar detrimental effects of having an observer present during a neuropsychological examination. Based on the supporting literature provided, an argument could be made that either method of observation is detrimental to the examination process. But one distinction between the two options is clear—MCR 2.311(A) does not explicitly permit the trial court to allow an examination to be video recorded, but does explicitly permit the trial court to allow the attorney of the person being examined to be present during the examination.

When the language of a court rule is clear and unambiguous, we enforce it as written. *Acorn Investment Co*, 495 Mich at 350. We therefore decline the invitation of defendants and amici to consider whether, as a policy matter, third-party observation of a neuropsychological examination is always contrary to the interests of patients, litigants, and the practical and ethical concerns of neuropsychology generally, which is a topic more properly directed to our Supreme Court. See *Ozimek v Rodger (On Remand)*, 317 Mich App 69, 80; 893 NW2d 125 (2016),

overruled on other grounds by *Marik v Marik*, 501 Mich 918 (2017) (If practitioners "wish to promote an expanded court rule, our Supreme Court would be the proper venue for that request.")

We do, however, note that MCR 2.311(A) provides discretion to the trial court in various respects. Under the court rule, a trial court has discretion to order a party to submit to a physical or mental examination, upon motion of a party, when the mental or physical condition of a party is in controversy and good cause is demonstrated. "In the context of our court rules, good cause simply means a satisfactory, sound or valid reason. A trial court has broad discretion to determine what constitutes good cause." *Thomas M Cooley Law School v Doe 1*, 300 Mich App 245, 264; 833 NW2d 331 (2013) (quotation marks and citations omitted). In other words, MCR 2.311(A) does not require the trial court to order an examination, even if the party's mental or physical condition is in controversy, and even if good cause is shown. Rather, ordering an examination is discretionary with the trial court under MCR 2.311(A) and an abuse of the trial court's discretion will be found only if the trial court chooses an option outside the range of principled outcomes. The abuse of discretion standard recognizes that in some circumstances a single correct result does not exist. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Similarly, under MCR 2.311(A) the trial court has discretion to permit the attorney for the person undergoing the examination to be present during the examination. Although there may be circumstances in which permitting third-party observation by the examinee's attorney could be found to be an abuse of the trial court's discretion, we cannot conclude that permitting the examinee's attorney to observe the examination is always, in and of itself, an abuse of the trial court's discretion, given that MCR 2.311(A) contemplates that exercise of discretion. In addition, we disagree with defendants' contention that MCR 2.311(A) requires a showing of good cause before the trial court may permit the presence of the attorney at the examination. The court rule provides that the trial court may order a party to submit to a physical or mental examination, upon motion of a party, when the mental or physical condition of a party is in controversy and good cause is demonstrated. The court rule further provides that "[t]he order must specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made, and may provide that the attorney for the person to be examined may be present at the examination." MCR 2.311(A). The court rule does not specify that "good cause" *must* be established before the attorney of the examinee is permitted to observe the examination, though the trial court may choose to require some showing of good cause in the course of exercising its discretion.

That being said, we find it difficult to envision under what circumstances, if ever, it would be advisable to have an examinee's attorney present during a psychological examination. A party conducting the examination is subject to discovery of its expert's report and its expert is subject to being deposed. We consider that it would be the rare occasion when these discovery mechanisms are insufficient to protect the examinee, and they likewise would appear to provide sufficient discovery tools to the party examined. However, the question whether plaintiff's attorney should be present at the examination in this case was not decided by the trial court, and we will not speculate in advance of the trial court's decision.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Patrick M. Meter